# Keystone Paper Mills Co. *v.* Pennsylvania Fire Ins. Co. et al.

*Insurance—Fire insurance—Repairs or rebuilding—Affidavit of defense—Covenants of the policy—Pleading—Credibility of witnesses.*

1. Where an insurance company depends on the acceptance of the option to repair, or rebuild, or bases any defense on the repair provision as ground to reduce the policyholder's claim, it must

give specific notice of its intent so to do through averments in the affidavit of defense.

2. The provision in a policy that liability should not exceed the cost to the insured of replacing the property and all like subordinate provisions, limiting or abating the primary liability of the insurer, constitute no part of the cause of action of the insured, if there is a breach of those stipulations. They are inserted in the policy for the benefit of the insurer and they must be pleaded by the latter if it seeks to diminish or limit the amount of recovery by reason thereof. Even as affecting the credibility of witnesses, it is in the nature of a substantive defense of which plaintiff should be advised.

3. The insurance company, under the option to repair or rebuild, if it elects to avail itself of the privilege, is not only bound to put the property in substantially the same state or as good as it was before the fire, but the insurer cannot avail itself of any relieving circumstances unless such repairs make the property as serviceable as it was before the loss.

4. In all controversies as to the condition of a building or machinery after a fire, the question as to whether or not the property has been so far damaged as to be beyond repair or service, is a question for the jury, whose determination, depending as it does on oral testimony, will be conclusive.

5. An offer to repair by a third person, will not be considered as the exercise by the company of its option, unless made with the authority and under the direction of the company.

6. Where the insurer elects to and does repair, that part of the contract with regard to loss ceases to control, and a different provision of the policy operates.

7. The insurer in attempting repairs, agrees to rebuild, and the rights and responsibilities are to be measured accordingly; any resulting damages are based on the contract to rebuild or repair; this may be more or less than the total insurance.

8. The insurance company cannot seize upon offers made by a third party, appropriate them to its own use as an exercise of its right, and then hold the insured to the submitted estimate.

9. Even if an offer of a third person to repair a machine could be made the subject of defense ·by the insurance company, it would not be available if the opinion of experts of such third person stated that the property after the repairs would not be as good as it was before the fire.

10. In an action against an insurance company to recover for the loss of a large and complicated machine, which was in first-class condition before the fire, ·it is proper to refuse to admit in evidence government rates for depreciation of property; the evi-

dence of competent valuation engineers is the proper proof to be submitted, if it is obtainable.

11. In such case, a "for sale" sign placed by the insured on the premises where the machine was burnt, does not prevent the insurer from exercising its option to repair, if it wishes to do so.

12. The insured is not required to stand by and watch its property wasted by the elements or further destroyed, waiting for the insurance company to determine which course it intends to pursue.

*Appeals—Trial—Charge—Further instructions.*

13. Where a trial judge offers counsel opportunity to suggest matters not covered by the charge, and counsel neglects to avail himself of it, he cannot, on appeal, complain of the inadequacy of the charge as to certain matters alleged not to have been covered.

Argued May 12, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 103-5, Jan. T., 1927, by defendants, from judgments of C. P. Delaware Co., March T., 1925, Nos. 385, 391 and 392, on verdicts for plaintiff, in cases of Keystone Paper Mills Co. v. Pennsylvania Fire Insurance Co.; Keystone Paper Mills Co. v. Peoples National Fire Insurance Co. and Keystone Paper Mills Co. v. Fire Association of Philadelphia. Affirmed.

Assumpsit on policies of fire insurance. Before BIDDLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdicts and judgments for plaintiff against the Pennsylvania Fire Insurance Co. for $13,737.86, against the People's National Fire Insurance Co. for $4,607.74 and the Fire Association of Philadelphia for $6,911.57. Defendants appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Horace Michener Schell,* with him *Albert L. Moise, Howard M. Lutz,* of *Lutz, Ervin, Reeser & Fronfield,* for

appellants.—It was error on the part of the trial judge to leave to the jury the question as to whether plaintiff should have accepted one of the offers to repair. He should have charged that plaintiff should have accepted one of these offers, or explained its conduct in scrapping the machine without notice to defendants.

There was error in the trial judge's exclusion of the testimony that some months before the fire, plaintiff had a "for sale" sign painted, and that for some months before the fire this sign was maintained on the premises: Covanhovan v. Hart, 21 Pa. 495; Com. v. Yerkes, 29 Leg. Int. 60.

*Frank M. Hunter,* with him *John B. Hannum, Jr.* and *James Gay Gordon,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

The action in the court below was based on five policies of insurance against separate companies to recover damages to machinery occasioned by a fire at the Keystone Paper Mills. The fire broke out at midnight and burned with terrific intensity throughout the night. It started in the waxing room where many tons of ordinary paper, large quantities of wax paper, and many thousand pounds of paraffin were located. The heat was so intense that glass windows were melted in adjoining rooms. The particular machine about which this action centered is described as a paper machine located in the room next to the waxing room. It was a large machine, made up of thousands of parts, consisting of many rolls of different designs and sizes, and would require the labor of eight or ten men about two months to assemble on its foundation plates. It was a hundred feet long and nine feet wide and weighed about a hundred tons. The paper stock in fluid form was carried into and through the first section by a wire mesh. This section is comprised of a series of rolls referred to as breast rolls, couch rolls and a number of table or tube rolls. From

the first section the paper was carried on a belt through a series of press rolls, during which process some of the moisture was pressed out of it. From the last press roll the paper was passed to what is referred to as the "dry" part of the machine, making its way on canvas belts over eighteen "dryers," a series of steam filled rolls, one above the other; and thence to the finishing apparatus, which consisted of two series of "calendar" rolls and from them to the reel and slitter which slit the different sizes for the market; and from there to the winders. It was driven by gears with large wooden cogs, with the aid of pulleys. The machine had to be precisely level, the rolls in perfect alignment and absolutely round, and some of the parts true to the extent of from one to two one-thousandths of an inch. It made an exceptionally difficult and high grade of paper and had a daily average capacity of ten tons.

The flames from the waxing room, through openings in the wall, swept directly across the paper machine. It was subjected to a continuous hot fire for three hours, so hot it melted babbit bearings. This could be done only when exposed to a temperature of about 600 degrees. An overhead sprinkling system and a fire hose pushed through a hole in the roof plied water on it in constant flow for hours.

The question before the jury was the value of the machine before and after it had been damaged by the fire. Plaintiff's evidence, if believed by the jury, showed that it was, for all practical purposes, useless. This was contested by defendants. We do not propose to review the evidence as it is a matter of importance to the parties only. The questions raised were solely for the jury, under proper instructions from the court.

The policy gave the insurance company an option to rebuild or repair the damaged property. Appellants now seek to limit plaintiff's recovery to the estimated cost of repairs; or, if that was not allowable, then they contend that, as the machine was sold for junk, the dis-

crepancy between the estimated cost of repairing compared with the value given in evidence by plaintiff, cast on the paper company the burden of explaining its conduct in selling the machine for scrap; in other words, their act in selling was a breach of good faith and fair dealing. We might dispose of all the assignments relating to questions of repairs, by the observation that the affidavit did not set up any offer to repair or rebuild the machine, or any offer to place it in as good a condition as it was before the fire, both as to service and durability; the pleadings were wholly silent on the subject of repairs.

When an insurance company defends on the acceptance of the option to repair, or rebuild, or bases any defense on this repair provision as ground to reduce the policyholder's claim, it must give specific notice of its intent so to do through averments in the affidavit of defense: Farmers' Bank v. Manchester Assur. Co., 106 Mo. App. 114, 80 S. W. 299; Port Blakely Mill Co. v. Hartford Fire Ins. Co., 50 Wash. 657, 97 Pac. 781; Sutherland v. Standard Life & Acc. Ins. Co., 87 Iowa 505, 54 N. W. 453; Mechanics' Ins. Co. of Phila. v. C. A. Hoover Distilling Co., 182 Fed. 590, 596.

The provision in a policy that liability should not exceed the cost to the insured of replacing the property and all like subordinate provisions, limiting or abating the primary liability of the insurer, constitute no part of the insured's cause of action, if there is a breach of those stipulations. They are inserted in the policy for the benefit of the insurer and they must be pleaded by the latter if it seeks to diminish or limit the amount of its recovery by reason thereof. This is the rule deduced from the authorities: Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288, 290, 291; Dietrich v. Davies, 274 Pa. 213, 215; Hoffman v. Mutual Fire Ins. Co. of Reading, 274 Pa. 292, 296; Farmers' Bank v. Manchester Assurance Co., supra; Port Blakely Mill Co. v. Hartford Fire Ins. Co., supra; Sutherland v. Standard Life

& Acc. Ins. Co., supra. Even as affecting the credibility of the witnesses, it is in the nature of a substantive defense of which plaintiff should be advised.

It appears that two companies made offers to repair, but neither offer was sufficient to give to the insured that which the policy contemplated, a machine as good and as serviceable as it was before the fire. The insurance company, under the option to repair or rebuild, if it elects to avail itself of the privilege, is not only bound to put the property in substantially the same state or as good as it was before the fire, but the insurer cannot avail itself of any relieving circumstances unless such repairs make the property as serviceable as it was before the loss: Joyce on Insurance, par. 3158; Hartford Fire Insurance Co. v. Peebles, 82 Fed. 546. An insurance company cannot avoid its responsibility under the policy or minimize its damage by an offer to repair property which is so far injured as to be incapable of repairs, or where it cannot be restored to the condition it was in before the fire, or to a condition as serviceable: Joyce on Insurance, supra. In all controversies as to the condition of a building or machinery after a fire, the question as to whether or not the property has been so far damaged as to be beyond repair or service is a question for the jury, whose determination, depending as it does on oral testimony, will be conclusive.

Nor will an offer to repair by a third person be considered as the exercise by the company of its option unless made with the authority and under the direction of the company, which at all times assumes the responsibility for the success of the repairs. Where the insurer elects to and does repair, that part of the contract with regard to loss ceases to control, and a different provision of the policy operates. The insurer in attempting repairs agrees to rebuild, and the rights and responsibilities are to be measured accordingly; any resulting damages are based on the contract to rebuild or repair.

This may be more or less than the total insurance: Fire Association v. Rosenthal, 108 Pa. 474.

Had the Keystone Paper Company accepted any of the offers by these third persons, depending on the insurer to make good in keeping with the terms of the agreement, it would have faced a controversy of a nature not covered by the policy. The insurance company's burden would have been shifted to that of the repair company.

There is nothing in the contract of insurance that required the insured to accept the responsibility of the repair company, as the court below has well observed. Had the insurance company wished to take advantage of its option to repair, it could have made a contract with Moore and White and subjected itself to the full responsibility of the policy,—to furnish a machine as good and as serviceable as the one that was in use. The appellants cannot seize upon offers made by others, appropriate them to their use as an exercise of their right, and then hold the appellees to the submitted estimate. The question would still remain, What was the amount of the damage, or the difference in value before and after the fire? Had appellants elected to repair and it had been accepted, there would have been no estimate. Had the companies estimated the cost of repair and submitted the alternative proposition, either to pay the estimate or repair, this would not amount to an acceptance of the option within the policy. Persons unaccustomed to negotiations of this character are not to be put to the hazard of such propositions by experienced dealers in such transactions.

But even the offers of the third parties to repair were subject to defects. The engineers of both companies stated the machine would not be as good after the repairs as it was before the fire. When the estimates are accompanied by such testimony, they do not have much, if any, bearing on the question of damages. These ad-

missions go far toward destroying the availability of the offers for any purpose. The court below, in charging the jury, gave full weight to every circumstance defendants could claim through the offers to repair in reduction of plaintiff's claim. The learned trial judge said, "If you find that the machine could have been repaired for [the amounts contained in the offers to repair] ......so that it would have been substantially as good and serviceable as before the fire, then in that event the recovery for damage to the paper machine would be limited to said amounts."

It is urged that the jury's attention was not directed to the only evidence in issue. It is difficult to understand just what appellants mean. The court covered in its charge the essential points involved. Of course, it did not instruct the jury to find for the defendant, but all the necessary averments of fact were gone into, and moreover, at the end of the charge, defendants were invited to offer any corrections deemed necessary, either as to the law or facts. If counsel felt aggrieved by the court's failure to charge, they had ample opportunity to suggest matters which were not covered. In this view we do not hesitate to overrule all the assignments of error based on the charge of the court.

Exception was taken to refusal of the offer to prove government rates for depreciation of property, and it is argued the jury were permitted to take into consideration only the sound value of the machine. The testimony shows the machine was as good as new before the fire, in first-class condition, and, for the manufacture of this class of paper, like a "brand new machine"; no evidence was offered by appellants to show value before the fire. The court instructed the jury to allow depreciation; the witnesses, in stating value, took it into consideration. Their testimony fixed its worth at from $125,000 to $97,000, so it is quite evident depreciation must have been allowed, as the verdict was for $86,000.

The government's table is theoretical; it would, of course, be useful if better evidence was not obtainable. The latter was available and could have been secured. "The testimony of competent valuation engineers who examined the property and made estimates in respect of its condition is to be preferred to mere calculation based on averages and assumed probabilities": McCardle v. Indianapolis Water Co., 47 Sup. Ct. Rep. 144, 150; Pacific Gas and Electric Co. v. San Francisco, 265 U. S. 403, 406.

The sixth assignment complains of the use of the word "assurance" by the engineers in connection with the offer to repair. The two engineers who had estimated the probable cost of repair said they could give no assurance that, after the repairs were made, the machine would be as good as it was before. The word was brought out by the cross-examination: "Q. And after you had all that work done, would the machine be better than it was before the fire? A. I wouldn't say that. Q. Would it be as good? A. No, sir." The objection is without foundation.

The "for sale" sign placed on the premises did not prevent the insurer from exercising its option to repair, if it wished to do so. The policy did not require the insured to stand by, watch its property wasted by the elements or further destroyed, waiting for the insurance company to determine what it is going to do, without attempting something to protect it or to realize on it. The insured has the right to proceed within a very reasonable time after the fire to put his property in shape, or dispose of it. Of course, the company should be promptly notified and ample opportunity given it to inspect and determine what it will do. When the insured does this, he is not required to wait until the insurance company at its pleasure decides what course it will pursue. The insurance company here had ample time and the "for sale" sign did not interfere.

The other assignments are without merit. We do not consider the verdict excessive and think the case was fairly presented.

Judgments entered to Nos. 103, 104 and 105, are affirmed at the cost of appellants.