**James L. MASON, Plaintiff-Appellee,**

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

April 6, 1982.

Permission to Appeal Denied by Supreme Court June 21, 1982.

Arthur E. McClellan, McClellan & Powers, P.C., Gallatin, for defendant-appellant.

D. Russell Thomas and Peter V. Hall, Daniel, Burton & Thomas, Murfreesboro, for plaintiff-appellee.

## OPINION

CONNER, Judge.

This is an appeal by the defendant-appellant, Tennessee Farmers Mutual Insurance

Company,[1] (TFM), from an adverse jury award to plaintiff, James L. Mason, for flood damage to a truck owned by him and insured by the defendant.

Plaintiff sued TFM alleging damages for breach of its insurance contract. Mr. Mason also sought the statutory bad faith penalty provided by T.C.A. § 56–7–105.[2]

After issue was joined a jury returned a plaintiff's verdict for $7,956.50. Thereafter, defendant filed both a motion for remittitur and a motion for a new trial. The latter motion was denied by the trial judge subject to plaintiff's acceptance of a remittitur of $601.25. Plaintiff agreed to the remittitur under protest and defendant perfected this appeal.

TFM raises two issues. The first assignment is:

## I. WHETHER THE TRIAL COURT ERRED IN CHARGING THE JURY ON THE BURDEN OF PROOF

█ The first error complained of by TFM is obviously a direct assault on the charge of the trial judge. Neither during the proceeding itself nor in its motion for a new trial did the defendant question the accuracy of the court's charge in any respect. Accordingly, pursuant to T.R.A.P. 3(e), it is barred from raising the question herein. That rule provides in pertinent part:

*Appeal as of Right: Availability; Method of Initiation.*—

. . .

(e) Initiation of an Appeal as of Right. —. . . in all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused, . . . unless the same was specifically stated in a motion for a new trial; *otherwise such issues will be treated as waived. . . .* (Emphasis supplied.)

In further emphasis of the requirement T.R.A.P. 13(a) states:

*Scope of Review.*—(a) . . . *Except as otherwise provided in Rule 3(e),* any question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required. (Emphasis supplied.)

The rule is absolutely clear and not subject to misinterpretation. Obviously, the reason therefor is to allow the trial court to rectify any errors that might have been made at trial and to avoid "appeal by ambush." The rule is not new in this jurisdiction, having been the law prior to the adoption of the existing rules of appellate procedure. *See Cordell v. Ward School Bus Manufacturing, Inc.,* 597 S.W.2d 323, 327 (Tenn.App.1980); 2 TENN. DIGEST, *Appeal & Error* § 301 (1972).

Defendant urges that pursuant to T.R.A.P. 13(b)[3] this court may review this issue

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

2. *Additional liability upon insurers and bonding companies for bad-faith failure to pay promptly.*—(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which said loss occurred, shall be liable to pay the holder of said policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy or fidelity bond; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

. . . . .

3. *Scope of Review.*—

(b) Consideration of Issues Not Presented for Review.—Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

regardless of its failure to raise same in its motion for a new trial. We do not believe T.R.A.P. 13(b) was designed for circumstances such as these. Otherwise, there would be absolutely no reason for the adoption of T.R.A.P. 3(e). We believe that the comments of the drafters of the rules are in accord with our view. According to the Advisory Commission Comments, T.R.A.P. 13(b) is intended to allow the court to consider jurisdictional issues or other questions which have not been presented in the briefs so as to accomplish the objectives specifically stated in said rule. They are in the main:

(1) To prevent needless litigation,

(2) To prevent injury to the interests of the public, and

(3) To prevent prejudice to the judicial process.

We cannot hold that a question concerning the court's charge here raised for the first time fits any of these very special categories. The defendant's first assignment is without merit.

The second issue raised by TFM is:

## II. WHETHER THE COURT AND JURY ERRED IN AWARDING DAMAGES

As phrased, the assignment is general at best and vague at worst. Plaintiff earnestly contends that this question is subject to the same T.R.A.P. 3(e) infirmity as the previous issue. However, we construe the applications in the motion for new trial to be broad enough to allow consideration of the question on appeal.

As we understand the specifics of the defendant's second assignment they are that: (a) There was insufficient evidence presented at trial to sustain the award of both compensatory and punitive damages; and (b) The remittitur ordered by the trial court was in an insufficient amount.

■ Of course, in testing the validity of a plaintiff's jury award we must view the evidence in the light most favorable to plaintiff. This court has no right to weigh the evidence in a jury case, but must in-

dulge every reasonable inference in favor of the plaintiff when there is material evidence in support of the verdict. *Houser v. Persinger,* 57 Tenn.App. 401, 405, 419 S.W.2d 179, 181 (1967). We must look at all the evidence, take the strongest legitimate view of it in favor of the plaintiff and allow all reasonable inferences in plaintiff's favor. *Norman v. Liberty Life Assurance Co.,* 556 S.W.2d 772, 773 (Tenn.App.1977); *Truan v. Smith,* 578 S.W.2d 73, 74 (Tenn.1979). Our duty upon review of conflicting evidence in a jury trial is not to determine where the truth lies, but only to determine if there was any material evidence to support the verdict below. *Davis v. Wilson,* 522 S.W.2d 872, 875 (Tenn.App.1974); *Chattanooga Gas Co. v. Underwood,* 38 Tenn.App. 142, 149, 270 S.W.2d 652, 655 (1954). Even if we would have reached conclusions different from those reached by the jury, if there is some material evidence to support the verdict, it must be affirmed. *Davis v. Wilson, supra; Chattanooga Gas Co. v. Underwood, supra* at 149–150, 270 S.W.2d at 655–656.

■ What then is the evidence viewed in the light most favorable to the plaintiff? In recounting this proof we are aware that in certain respects it is in conflict with defendant's evidence, but where conflict exists we recite plaintiff's view.

The insured truck, a 1979 Ford F–250 pick-up, was nearly new and in excellent condition, at the time it was damaged. On May 4, 1979, the vehicle was parked at the plaintiff's place of employment in LaVergne, Tennessee, when a flood occurred. The water level rose to "chest high" on the plaintiff, and to a point where the hood of the truck was completely submerged. Only the upper portion of the cab was visible.

When the waters receded, the truck was covered with mud and debris. Plaintiff observed the water line inside the truck as being over the fuse box. He further noticed that water had come through the firewall over the electrical wiring and above the seat.

Plaintiff contacted the defendant insurance company to report his loss the day

after the flood. Coverage under the policy was never questioned by the defendant. TFM waited eleven days before inspecting the truck and discussing plaintiff's loss with him. Mr. Jack Shaufner, an adjuster for defendant, made the original inspection, but made no appraisal. Mr. Mason was informed by Mr. Shaufner and defendant's local agent, Paul Reed, that he could obtain estimates from whomever he wished, and could have the truck repaired at the place of his choice. Thereupon, plaintiff took his truck to two separate auto dealers, but both stated that the cost of repair would be too great to justify. In fact, Harold Jennings, the local auto dealer, stated that it would cost more to repair the truck than to replace it.

Mr. Mason then took these estimates to Mr. Reed and Mr. Shaufner, but both refused to accept them. Plaintiff demanded that his truck be fixed in order to restore the vehicle to its condition prior to the flood. However, according to plaintiff, the only offer that the plaintiff ever received was that defendant would flush the engine and transmission. Ronnie Wilson, defendant's adjuster in Smithville, agreed with plaintiff that defendant would only flush the engine and possibly rebuild the transmission. TFM, although it would occasionally put its offers in writing, did not do so in this case. Defendant never made any offer to plaintiff to pay for loss in the fair market value of the truck as a result of the flood.

The only testimony of the fair market value immediately before the flood was $8,000.00 given by Mr. Mason. He further testified that the fair market value immediately after the flood was $2,000.00; and, plaintiff's experts testified that the fair market value after the flood was in the range of $2,500.00 to $3,000.00. Defendant's witness, Brooks Jarrell, an automobile dealer in Murfreesboro, testified that the fair market value *after the truck was repaired* was between $4,000.00 and $4,500.00. He did not state any value of the truck immediately after the flood and before repairs.

The truck was eventually repossessed by Ford Motor Credit Company, since, according to plaintiff, he could not afford to continue to pay for a truck that defendant would not agree to properly repair or replace. TFM thereafter negotiated and settled with Ford Motor Credit Company by paying to it and to University Ford $601.25 for the repair of the truck. Although the insurance policy authorized the defendant to settle only with the owner of the vehicle or the named insured (both of whom were the plaintiff), defendant chose to settle with the lienholder without authorization of the plaintiff.

Plaintiff's experts, Harold Jennings and John Alexander, testified that a flood-damaged vehicle is substantially reduced in value even after repairs are made. Both experts further testified that even though a vehicle can be repaired to make it drivable, flood vehicles may cause many problems thereafter, thereby rendering future performance unpredictable. If a seller of a flood vehicle truthfully discloses the fact of previous water damage, the fair market value would be adversely effected. For these reasons, the experts stated they would not sell flood vehicles because of the many repercussions and reduced value. Mr. Alexander said he could possibly sell the truck as a salvageable unit. Plaintiff's experts based their opinions upon their combined forty years' experience in auto sales, service and estimate of repairs. Defendant's witness, Mr. Jarrell, owner of the University Ford, even acknowledged that there would be a substantial reduction in value after repair—up to at least one-half of its former fair market value.

In our judgment, viewing the proof most favorably to plaintiff, as we must, there is ample evidence to support a finding by the jury of compensatory damages of up to $6,000.00.

Defendant attempts to limit its liability by reliance on the following language contained in the insurance policy:

> . . . The limit of the company's liability for *loss* shall *not exceed the actual cash value of the property,* or if the *loss* is

of a part thereof the actual cash value of such part, *at time of loss,* nor what it would then cost to repair or replace such property with other of like kind and quality, less depreciation and deductible amount applicable.... (Emphasis supplied.)

However, we find no solace here for defendant. This provision merely specifies the limits of liability of the defendant. There is ample testimony that the loss incurred by plaintiff was to the subject vehicle as a whole, not just a part thereof. It is true that defendant sought to replace or repair certain parts of the vehicle, claiming the loss related only to those parts. However, there is considerable evidence that the entire vehicle suffered a very substantial loss in value after the truck was engulfed in the flood. Plaintiff testified that the fair market value of the vehicle immediately before the flood was $8,000.00. Mr. Mason further introduced evidence by his testimony and that of his experts that the fair market value immediately after the flood was in the range of $2,000.00 (plaintiff's view) to $3,000.00 (plaintiff's expert's opinion). There is then proof in this record that there had been a reduction in value to the truck of up to $6,000.00 occasioned by the flood. This suggested loss of value was not attributable to any specific part of the truck, but to the truck as a whole. Therefore, the policy provisions which limited the defendant's liability sets that limit at $8,000.00 (the "actual cash value" as testified to by plaintiff). Since the jury award was less than that amount in total—and substantially less in compensatory damages—there has been no violation of the last mentioned provision of the insurance policy.

Defendant also attempts to rely on the language of the insurance contract which states:

SETTLEMENT OPTIONS

The company may at its option pay for the *loss* in money or may repair or replace *the* property or such part thereof as aforesaid.... (Emphasis in original.)

The law in Tennessee is well-established that any option which an insurance company may have as to repair or replacement of the property is not an absolute right. Rather, it is conditioned on whether the property can be substantially restored to its fair market value immediately prior to the loss. If this cannot be done, the sole method of complying with the insurance contract is to pay to the insured the loss of value. *Stoops v. First American Fire Insurance Co.,* 160 Tenn. 239, 22 S.W.2d 1038 (1930); *Weems v. Service Fire Insurance Co. of New York,* 181 Tenn. 1, 178 S.W.2d 377 (1944); *England v. Tennessee Farmers Mutual Insurance Co.,* (Tenn.App., filed November 21, 1980). In *Stoops* the insurance company admitted its liability for $1,100.00, the cost or repair; but, the insured claimed an additional amount of depreciation in the value of his automobile resulting from the accident which repair and replacement would not restore. The insurer contended that it had the right to elect whether or not it could simply repair the vehicle as provided for in the insurance contract. This court held:

... If the repair or replacement of parts will restore the damaged automobile to substantially its condition at the time it was damaged, then the cost of such repair or replacement is the limit of the insurer's liability; *but if the damage is so extensive that repair or replacement of parts will not restore the automobile, then the cost to replace the automobile is the limit of liability....* (Emphasis supplied.)

*Stoops v. First American Fire Insurance Co., supra* at 244, 22 S.W.2d at 1039. The court in *Stoops* further held:

The effect of the chancellor's decree herein is that the cost of repairs and replacement, reported by the appraisers as $1100, is not the full measure of the insurance to which appellee is entitled, unless such repairs and replacements will restore the value possessed by the automobile at the date of the accident....

*Id.* at 247, 22 S.W.2d at 1040.

In *Weems* the court made a similar ruling in a case involving a stolen auto later recov-

ered, but damaged. In an attempt to settle the claim, the insurer tendered to the insured the amount estimated as necessary to make the repairs, plus the price for new tires, a total of $181.50. The trial court rendered judgment for the plaintiff in that amount. However, the court of appeals increased the judgment to $727.00, that being the difference between the appraised value of the car as recovered and the face value of the policy or the cost of the car, which was the value at the time of the theft of the automobile. The insurer contended that it had the right to repair or replace or offer the cost of repair to the insured. However, the supreme court held:

> ... The company, as a condition to exercising its option, must compensate for all physical damage, regardless of the limits of the policy. If this is impracticable or unreasonably expensive, the company has left its other option, which is to keep the car *and to pay the appraised value when stolen.* (Emphasis in original.)

*Weems v. Service Fire Insurance Co. of New York, supra* at 5–6, 178 S.W.2d at 378.

Tennessee has, therefore, consistently held that under such coverage as here if the property cannot be substantially restored to its fair market value by virtue of repair, then the amount of damages to which the insured is entitled is the reduction in the fair market value of the vehicle as a result of the occurrence. This is the law elsewhere as well. *See Home Insurance Co. v. Springdale Motor Co.,* 200 Ark. 893, 141 S.W.2d 522 (1940); *Mutual Fire & Automobile Insurance Co. v. Muckelroy,* 236 S.W.2d 555 (Tex.Civ.App.1951); *Motors Insurance Corp. v. Smith,* 218 Miss. 268, 67 So.2d 294 (1953); *Western Automobile Casualty Co. v. Lee,* 246 Ky. 364, 55 S.W.2d 1 (1932); *Keystone Paper Mills Co. v. Pennsylvania Fire Insurance Co.,* 291 Pa. 119, 139 A. 627 (1927). This doctrine was recently re-emphasized in the case of *England v. Tennessee Farmers Mutual Insurance Co., supra,* where this court stated:

> Where an insurer properly exercises its option to repair damaged property, it tac-

itly represents that it will substantially restore the vehicle as to function, appearance and value. Under these circumstances, the insured has no choice but to acquiesce and insurer is bound to repair the property and restore it to its former condition. . . .

*Id.* at 4. The facts of *England* and the instant case are quite similar. In *England* defendant's adjuster had testified that his company stood ready, willing and able to authorize repairs reflected in a repair estimate, but there was no testimony by either the adjuster or the repairman that the proposed repairs would substantially restore the vehicle to previous function, appearance and market value, even though the repairman guaranteed his work.

■ In this case the record is replete with testimony that the truck could not be substantially restored to its former fair market value. The only person to testify as to the fair market value even after the repairs were made was Brooks Jarrell, defendant's witness. According to his testimony even after his company made the repairs, the fair market value of the truck was reduced to as low as $4,000.00. This surely cannot be construed as a substantial restoration of the fair market value of the truck.

None of the repairmen herein stated that they could repair the truck so as to restore it to its former market value. Nor could any of them guarantee the work. We are satisfied there is sufficient evidence in this record to sustain the award of compensatory damages by the jury.

■ Further, based on the proof in this record we believe the jury was entitled to find that defendant's offer was clearly inadequate and made in bad faith. This is ordinarily a fact determination for the jury and should be upheld if there is any evidence to support the finding. *Palatine Insurance Co. v. E.K. Hardison Seed Co.,* 42 Tenn.App. 388, 303 S.W.2d 742 (1957).

■ If plaintiff's proof is believed, he was treated unfairly in many respects, suf-

ficient to justify a bad faith award. Although the plaintiff immediately reported his loss to TFM, the defendant waited eleven days before it ever investigated the claim. Plaintiff was then advised by the adjuster, Mr. Shaufner, and the local agent, Mr. Reed, to obtain estimates from whomever he wished. Upon that instruction, plaintiff took his truck to two separate auto dealers. Both dealers stated that the cost of repair would be too great to justify fixing the vehicle, and that even after repair, the truck would be greatly reduced in value. Therefore, restoration to full value was not possible. Plaintiff transmitted this information to both Mr. Reed and Mr. Shaufner, but they refused to accept the opinion of these dealers.

· Defendant's adjuster, Ronnie Wilson, and Mr. Reed acknowledged that in spite of this knowledge all TFM offered to plaintiff was to flush the engine and possibly rebuild the transmission. Plaintiff then demanded that the truck be restored to its original condition and asked the defendant to do more than just flush the engine and transmission. Mr. Mason asked that defendant also change the lubrication in various parts of the vehicle, clean or replace the floor mats, clean or replace the seats, and replace the radio and wiring. In response, according to plaintiff, Mr. Wilson simply restated defendant's position limiting the repairs to flushing the engine and transmission.

According to plaintiff's proof, defendant therefore, offered to make totally inadequate repairs. This is evidence from which a jury could determine that the defendant did not attempt to perform its contractual obligation to plaintiff in good faith. However, defendant's witness, Brooks Jarrell, testified that TFM ultimately did more for the lienholder, not even the payee under the insurance policy, than just flush the engine and transmission. TFM additionally relubricated the entire vehicle and cleaned the floor mats, gas tanks and seats. Furthermore, defendant never offered to compensate plaintiff for the loss in value to the truck, although its own witness admitted that its fair market value, even after repair, decreased by as much as fifty percent

(50%) ($4,000.00 under plaintiff's view of original value). From plaintiff's standpoint since nothing had been done to the truck in over two and one-half months, plaintiff could not afford to continue to pay therefor and certainly did not wish to waive his rights by accepting defendant's insufficient offer. As a result, plaintiff lost the truck by repossession. But TFM then quickly settled with Ford Motor Credit Company, the lienholder, although the policy of insurance specifically authorized settlement only with the named insured or owner of the vehicle. Plaintiff was both. The insurance policy provides in this respect:

SETTLEMENT OPTIONS

. . . The company may at its option settle any claim for loss either with the named insured or the owner of the property. (Emphasis in original.)

*Nelms v. Tennessee Farmers Mutual Insurance Co.,* 613 S.W.2d 481 (Tenn.App. 1978), holds that an insurance company is entitled to rely upon available defenses and refuse payment if there is substantial legal grounds that the policy does not afford coverage for the alleged loss. However, in this case there was no substantial legal ground that the policy did not afford coverage for the damage. To the contrary, under even defendant's proof there was indeed a substantially greater loss than TFM offered to pay to plaintiff.

Accordingly, viewed in the light most favorable to plaintiff we believe there was sufficient evidence upon which the jury could properly determine that the defendant had not acted in good faith with Mr. Mason.

■ Defendant finally insists that since the trial court granted a remittitur of $601.25 that there should be a corresponding reduction in the bad faith penalty of one-fourth of that amount, or $150.31. We think there is merit in this argument. Though the jury did not separate its verdict, the maximum award that it could have given plaintiff under the proof was $6,000.00 in compensatory damages. Adding the maximum twenty-five percent

(25%) statutory bad faith penalty of $1,500.00 and $456.50 in pre-judgment interest completes the total original jury award of $7,956.50. Since the $601.25 remittitur granted by the trial judge was a result of the defendant having paid this amount for repair to the truck, it is patently obvious that the reduction was sought and awarded by the trial judge from the compensatory damages awarded. Accordingly, because the bad faith penalty is limited by statute to twenty-five percent (25%) "on the liability for said loss" we believe there must be a corresponding reduction of twenty-five percent (25%) of the "bad faith" award as to the remitted sum. This totals $150.31.

We are not unmindful of plaintiff's contention that there should have been no remittitur granted by the trial judge since the $601.25 paid by the defendant was of no benefit to plaintiff, it coming after the truck was repossessed. However, the plaintiff presumably received a credit from the lienholder in that amount. The order of the trial judge granting the remittitur recites that the plaintiff received the "benefit of these repairs." However, there is no indication in this record of precisely how the matter was treated between Mr. Mason and the lienholder. In any event, we are comfortable with the remittitur ordered and will not disturb it. *Foster v. Amcon International, Inc.,* 621 S.W.2d 142 (Tenn.1981).

Accordingly, the judgment of the trial court is modified so as to reduce the award by $150.31 to $7,806.19. Otherwise, the judgment is in all respects affirmed and this cause is remanded. The costs are taxed to the defendant.

MODIFIED, AFFIRMED AND REMANDED.

TODD, P.J. (M.S.), and LEWIS, J., concur.