58878. NESTLE' COMPANY, INC. v. J. H. EWING & SONS et al.

BANKE, Judge.

The four plaintiff-appellees, J. H. Ewing & Sons, Real Estate Concepts, Inc., Eugene H. Anderson, and Eugene D. Scott, sued Nestle' Company to recover a broker's commission on the transfer of certain real estate which Nestle' subleased to Scripto, Inc. Scripto is not a party to the action. The plaintiffs sought recovery based on breach of an alleged agency agreement, tortious interference with property rights, and quantum meruit. In addition to the commission, they sought punitive damages and attorney fees.

Most of the facts are undisputed. Nestle' initially

named the brokerage firm of Coldwell Banker as its exclusive agent to find a tenant for the property in question; however, this exclusive agency expired on June 1, 1977; and the property was thereafter placed on "open listing." On August 11, 1977, Coldwell Banker, acting in concert with the Allen Morris Company, another brokerage firm, showed the building to Scripto's vice-president for operations, Sam Rawlins. Immediately afterwards, Coldwell Banker and Allen Morris registered Scripto with defendant Nestle' as a prospective tenant.

Plaintiffs Anderson and Scott were employed as real estate agents for plaintiffs J. H. Ewing & Sons and Real Estate Concepts, respectively, both of which are licensed brokerage firms. The two men had been assisting Scripto since 1976 in a search for a suitable building in which to relocate its business operations. In return, they expected to receive a broker's commission from the owner of whatever facility Scripto finally chose.

Acting on his own behalf and on behalf of the other plaintiffs, Anderson showed the Nestle' building to a Scripto consultant in June of 1976. Scripto displayed no interest in it at that time; however, by late 1977 Scripto's needs had changed, and the defendant's building again came under consideration. On September 20, 1977, less then six weeks after Coldwell Banker and Allen Morris had shown the property to Scripto's vice-president Rawlins, Anderson telephoned Nestle's general manager for warehousing, Howard Wellman, and advised him that he had a "hot prospect" for the building. Wellman confirmed to Anderson that the building was still available and that there was no longer an exclusive listing on it.

There is a conflict in the testimony as to whether Anderson identified Scripto as his "hot prospect" during this initial phone conversation. Anderson insisted that he did; Wellman recollected, somewhat less categorically, that he did not. In any event, arrangements were made for Anderson to show the building to his prospect. The following day, Anderson accompanied Scripto's president and board chairman, along with vice-president Rawlins and two engineers, on an inspection tour. They reacted very positively, and Anderson was instructed to pursue

negotiations with Nestle'. Later that day (September 21), Anderson again telephoned Wellman, advised him of Scripto's favorable response, and requested certain documents regarding the building. There is no question that Scripto was identified as the prospective tenant during this conversation.

Realizing that he had a potential commission dispute on his hands, Wellman consulted with his management, who instructed him not to have any further communication with Anderson. Nestle' soon thereafter obtained a statement from Coldwell Banker describing its efforts on Scripto's behalf and, apparently based on this statement, decided that the Coldwell Banker group would be entitled to the commission if Scripto decided to rent the building. Approximately two weeks later, in early October, Anderson again phoned Wellman to check on the documents which he had requested. Wellman's secretary informed him that Wellman was not available. He phoned again the next day and was told that Wellman did not wish to speak to him and that further calls regarding Scripto's interest in the building should be directed to Coldwell Banker. Anderson reported this state of affairs to Scripto and advised its management to contact Nestle' directly. Scripto did so and was placed in contact with Coldwell Banker. A sublease was negotiated soon thereafter and was closed on November 1, 1977. Coldwell Banker handled the negotiations and received from Nestle' a commission of $59,000.

In response to written questions submitted by the court, the jury found that "[t]here was an agency agreement between plaintiffs and defendant, and defendant breached it to plaintiffs' detriment." They also found that Nestle' was guilty of tortious interference with the plaintiffs' property rights, viz., their alleged contractual relationship with Scripto. The plaintiffs were awarded $70,069 as compensation for the lost commission, plus exemplary damages in the amount of $50,000 and attorney fees in the amount of $21,381. Following the denial of its motions for new trial and for judgment notwithstanding the verdict, Nestle' filed this appeal, enumerating 21 alleged errors. *Held:*

1. We find ample evidence to support the award of

compensatory damages. However, we find that the trial court committed reversible error in allowing the plaintiffs to recover without a determination that they were the "procuring cause" of the transaction.

"Where the services of a broker, as well as those of another broker, have conjointly contributed to the successful termination of negotiations resulting in the [transfer] of real estate for an owner, the question which of the brokers is entitled to commissions from the owner for effecting such [transfer] depends upon whose efforts were the primary, proximate, and procuring cause of the [transfer] negotiated. The broker whose services and efforts were the primary, proximate, and procuring cause of the [transfer] would be entitled to the commissions. [Cits.]" *Gresham v. Lee,* 152 Ga. 829, 830 (111 SE 404) (1921). The broker makes out a prima facie case that he was the procuring cause of the completed transaction "when he shows that negotiations for the sale were set on foot through his efforts, that he performed every service required by his employment which it was possible to perform, and that the failure on his part to personally consummate the [transaction] was due to the interference of the defendant." *Tomlin v. Bickerstaff,* 85 Ga. App. 48, 51-52 (68 SE2d 224) (1951), citing *Gresham v. Connally,* 114 Ga. 906, 909 (41 SE 42) (1902). See also *Wilcox v. Wilcox,* 31 Ga. App. 486 (3) (119 SE 445) (1923); *Sharp-Boylston Co. v. Lundeen,* 145 Ga. App. 672, 673 (244 SE2d 622) (1978).

The evidence was ample to make out a prima facie case for the recovery of a commission based on the above principles. Therefore, the trial court was correct in rejecting the general grounds of the motion for new trial and in denying the motion for judgment notwithstanding the verdict. However, in its charge to the jury, the trial court erroneously stated that Nestle' would be liable for the payment of a commission to plaintiffs *either* if they had procured Scripto as a tenant *or* if they had entered into an agency agreement with Nestle', and Nestle' had breached it. In the written interrogatories submitted to the jury, the issue of procuring cause was omitted altogether, despite a specific exception by Nestle' on this point. As shown above, Nestle's breach of an agency

agreement with the plaintiffs would not entitle the plaintiffs to a full commission in the absence of proof that they were the procuring cause of the sale. Thus, we hold that the omission of the procuring cause issue from the written questions to the jury constituted reversible error.

2. The jury's verdict finding the defendant guilty of tortious interference with the plaintiffs' contractual rights with Scripto is not supported by the evidence. It does not appear that the plaintiffs were contractually obligated to find Scripto a suitable relocation site, nor does it appear that Scripto was obligated to pay them anything. Instead, it appears that the plaintiffs joined in Scripto's search for a relocation site merely in the hopes of entitling themselves to a commission from the owner of whatever site Scripto eventually chose. The arrangement discloses no contractual rights with Scripto with which the defendant could have interfered. See generally *Luke v. DuPree,* 158 Ga. 590 (1) (124 SE 13) (1924); *Sheppard v. Post,* 142 Ga. App. 646 (1) (236 SE2d 680) (1977); Code § 105-1401.

3. In the absence of any evidence of tortious interference with property rights, the trial court erred in charging the jury that the plaintiffs could recover punitive damages. "Exemplary damages can never be allowed in cases arising on contracts." Code § 20-1405. This is true even though the refusal to pay may be in bad faith. *Traders' Ins. Co. v. Mann,* 118 Ga. 381, 386 (45 SE 426) (1903). See also *Thomas v. Phoenix &c. Ins. Co.,* 142 Ga. App. 550, 551 (236 SE2d 510) (1977). The plaintiffs' reliance on *Clayton McLendon, Inc. v. Judge & Co.,* 142 Ga. App. 659 (3) (236 SE2d 683) (1977) is misplaced. In that case there was evidence from which the jury could have found that the owner acted to defraud the broker in an attempt to avoid payment of a commission altogether. In the case before us now, there is no such evidence of fraudulent intent. Although Nestle's decisions were certainly marked by poor judgment, its actions disclose no actionable misrepresentation or concealment.

4. We similarly find no evidence to support a recovery of attorney fees. Attorney fees are allowed as expenses of litigation either where the defendant has acted in bad faith or where he has been stubbornly

litigious, causing the plaintiff unnecessary trouble and expense. See *Palmer v. Howse,* 133 Ga. App. 619 (2) (212 SE2d 2) (1974); Code § 20-1404. Recovery of attorney fees for stubborn litigiousness is not authorized where there is a "bona fide controversy." See *Woodson v. Burton,* 241 Ga. 130 (4) (243 SE2d 885) (1978); *Shearer v. Griffin,* 233 Ga. 47 (4) (210 SE2d 5) (1974); *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 524 (191 SE2d 317) (1972). There was clearly a bona fide controversy in this case as to which of the two groups of brokers was the procuring cause of the sale.

As to the bad faith issue, Anderson's account of his initial telephone conversation with Wellman reveals no attempt by Wellman to conceal Coldwell Banker's prior involvement with Scripto. Anderson testified that Wellman told him that Coldwell Banker had already shown the building to Scripto but "as a result of no follow-up, he (Wellman) *felt* like the issue was dead." (Emphasis supplied.) Wellman was wrong, of course; the issue was far from dead. However, being wrong in an expression of opinion is not the equivalent of fraud or bad faith.

As stated in Division 3, supra, there is no evidence of any fraudulent deception or concealment by Wellman, nor is there any indication that Nestle' sought to avoid the payment of a commission altogether as was the case in *Clayton McLendon, Inc. v. Judge & Co.,* supra. The logical thing for Wellman to have done had he secretly believed during his initial conversation with Anderson that Coldwell Banker had a claim to the commission was to have referred him to that company immediately. Such an action would have protected Nestle' from double liability. On the basis of the evidence cited to us from the transcript, we find no basis for an inference that Nestle' initiated its dealings with Anderson in bad faith, and thus we find no basis for the award of attorney fees. See generally *Spearman v. Flanders,* 143 Ga. App. 759 (240 SE2d 141) (1977); *McKenzie v. Mitchell,* 123 Ga. 72 (1) (51 SE 34) (1905).

5. Evidence showing the plaintiffs' efforts to interest Scripto in the Nestle' building prior to Anderson's first telephone conversation with Wellman was relevant on

the issue of which of the two sets of brokers was the procuring cause of the completed transaction and was therefore admissible.

6. The issues of whether Nestle' entered into an agency agreement with the plaintiffs and whether, if so, Nestle' breached it were properly submitted to the jury. Although, as stated in Division 1, supra, these issues were not dispositive of the question of liability, they were certainly relevant to it; and Anderson's testimony provided ample support for a finding that an agency relationship was created. The fifth, sixth, tenth, and eleventh enumerations of error are without merit.

7. The trial court did not err in charging the jury that they could award damages based on quantum meruit even if they determined that the plaintiffs were not the procuring cause of the transfer. See *Sharp-Boylston Co. v. Lundeen,* 145 Ga. App. at 674-675, supra.

8. The trial court did not err in refusing Nestle's requested charge defining procuring cause, as the charge which the court gave on this issue was substantively identical to the one requested.

9. We find no error in the form of the questions used to obtain the special verdict. Special verdicts based on written questions are authorized by Code Ann. § 81A-149 (a). We must reject Nestle's contention that the "questions" submitted to the jury in this case violated the statute or that they favored the plaintiffs merely because they were phrased as "true-false" statements rather than as actual questions.

10. The contention that plaintiffs J. H. Ewing & Sons and Real Estate Concepts, both of which are brokerage firms, could not hold valid broker's licenses because they were not 18 years of age and had not graduated from high school is fatuous. The contention that plaintiffs Scott and Real Estate Concepts were not entitled to recover because they had not had any direct dealings with Nestle' is also without merit, since it was shown that they were legally entitled to share in any commission earned by Anderson and J. H. Ewing & Sons. The remaining enumerations of error have been examined and have been found either to be without merit or to have been rendered moot by the foregoing.

*Judgment reversed. Quillian, P. J., and McMurray, P. J., concur.*

ARGUED OCTOBER 30, 1979 — DECIDED JANUARY 8, 1980 — REHEARING DENIED FEBRUARY 7, 1980 —

*Albert Sidney Johnson, Harmon W. Caldwell, Jr.,* for appellant.

*Charles H. Ivy, William L. Bost, Jr., Kenneth M. Weiss,* for appellees.