71464. FAUBION v. PIEDMONT ENGINEERING &
CONSTRUCTION CORPORATION et al.
71465. PIEDMONT ENGINEERING & CONSTRUCTION
CORPORATION v. FAUBION.
71466. PIEDMONT ENGINEERING & CONSTRUCTION
CORPORATION v. CHATTAHOOCHEE CONTRACTING,
INC. et al.
(342 SE2d 718)

POPE, Judge.

After a fire damaged a warehouse owned by Jack A. Faubion, he engaged Piedmont Engineering & Construction Corporation (Pied-

mont) to repair the warehouse. In turn, Piedmont subcontracted the roof repairs to Chattahoochee Contracting, Inc. (Chattahoochee) which subcontracted the roof welding work to Tom's Ornamental Iron Company, Inc. (Tom's). On December 11, 1979, while the repair work was in progress, a second fire occurred which destroyed an inventory of mechanical and electromechanical parts for discontinued NCR accounting machines and cash registers. Faubion brought suit against Piedmont, Chattahoochee, and Tom's alleging breach of contract against Piedmont, and negligence against all three. The jury returned a verdict in favor of Faubion in the amount of $11,000 against Piedmont and $22,000 against Chattahoochee and Tom's. The cross-claims of the defendants were submitted to the court alone, and the court found against each defendant on its cross-claim. We will consider each appeal in turn.

1. In Case No. 71464, appellant Faubion argues that a new trial is necessary because the trial court erred in refusing to allow Victor Paliuca to testify as an expert witness in regard to the marketability of the lost inventory. At issue in the trial was the value of the NCR parts destroyed in the fire. A corollary to that issue was the extent of the market which was available to appellant in which to sell the parts. Appellant offered Paliuca not as an expert on value, but rather as an expert on the marketability of the parts; that is, the extent of the market for such parts and how long it would take appellant to sell the inventory. Paliuca's qualifications were that he had been in the business of rebuilding, reconditioning and retailing office machines for 35 years, and thus had bought many of these parts over the years. On voir dire in regard to his qualifications, Paliuca conceded that he had never been in the parts business but had retailed machines only. Appellant argues that as a buyer of parts, Paliuca *was* the market and qualified as an expert on the market for such parts. The record shows that after the trial court refused to consider Paliuca an expert, it offered to let Paliuca testify as a non-expert stating facts he knew about the market for refurbished machines, the number of such machines in existence, if he knew, and then to give his opinion based on this on how long such machines would last. Appellant did not avail himself of this opportunity.

"An expert witness is one who through education, training, or experience has peculiar knowledge concerning some matter of science or skill to which his testimony relates. The question of whether a witness is qualified to give his opinion as an expert is one for the court. His determination will not be disturbed except that it be manifestly abused." (Citations and punctuation omitted.) *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 220 (312 SE2d 386) (1983). " 'While expert witnesses may give their opinions as to facts, principles, and rules involved in the science [or trade] in which they are

learned, they are not, as to questions lying out of the domain of the science, art, or trade in which they are experts, exempt from the restriction of the rule which requires witnesses to state facts and not opinions.' [Cit.]" *Southern R. Co. v. Cabe*, 109 Ga. App. 432, 443 (136 SE2d 438) (1964) (trial court abused discretion in allowing witness, qualified as mechanical engineer, civil engineer, and registered land surveyor, to give opinion on optical illusions).

We do not find that the trial court abused its discretion in not allowing Paliuca to testify as an expert. Appellant argued below that one who has bought Fords for 35 years would be qualified to give an opinion on the market for Fords; that one need not be a Ford dealer to give a market opinion. While we agree that one need not be a dealer in a particular item in order to be an expert in the marketing of the item, it does not follow that merely being a buyer of the item over a period of time qualifies one as an expert on the market. Paliuca conceded that he had no experience in marketing parts. Therefore, it is clear that the opinion testimony sought was not within his expertise. Appellant declined the opportunity afforded by the trial court to allow Paliuca to testify to that which he did know, the market for refurbished machines. For the reasons stated, we find no error in the trial court's ruling.

2. In Case No. 71465, Piedmont appeals the trial court's failure to grant its motion for directed verdict in regard to Faubion's breach of contract claim against it. Before the case went to the jury, Faubion withdrew his allegations of negligence against Piedmont and proceeded solely on the theory of breach of contract. No one refers us to a written contract between Faubion, or his predecessor in interest, and Piedmont, nor does our review of the record show one. Faubion alleges that Piedmont violated its contractual duty to see that the work to repair the warehouse was done skillfully, carefully, diligently and in a workmanlike manner. Although Faubion alleges in his complaint that this was an express provision of the contract, he points to no evidence in the record to support this contention, nor do we find any. Piedmont denied any such express provision and put up no evidence at trial.

The contractual duty alleged here is implied in every contract for work or services. *Howell v. Ayers*, 129 Ga. App. 899 (1) (202 SE2d 189) (1973). Faubion argues that the destruction of the contents of the warehouse through the negligence of Piedmont's subcontractors in performing the repairs breached this duty owed to it by Piedmont under the contract. Piedmont argues that it breached no duty owing to Faubion because the work which was the subject of the contract was completed with no defects; and that it cannot be held under contract for the collateral torts of its subcontractors when they are independent contractors and there exists no express contractual provision

holding it liable for such torts. We agree with Piedmont that the trial court erred in denying its motion for directed verdict.

Faubion does not argue on appeal that Chattahoochee and Tom's were not independent contractors. Therefore, absent an express contractual duty, Piedmont cannot be held liable for damage caused by the collateral torts of independent contractors. See *Fields v. B & B Pipeline Co.*, 147 Ga. App. 875 (250 SE2d 582) (1978); OCGA § 51-2-5 (3). In *Fields*, plaintiff granted an easement to the Clayton County Water Authority to construct a sewer across his property. The Water Authority subcontracted the work to B & B Pipeline which, in turn, subcontracted a portion of the work to Gause Construction Company. While performing its work, Gause damaged walnut trees owned by Fields outside the area of the easement. Fields sued the Water Authority and B & B Pipeline for trespass and breach of contract. The easement sued upon contained language that " 'grantee . . . shall exercise reasonable diligence in doing the necessary work in connection therewith so as to avoid damaging the property . . .' " Id. at 876. The court held that this language was not sufficient to impose upon the general contractor liability for the collateral torts of the independent contractor. "[U]nless the parties stand in the relation of master and servant, the employer is not responsible for the damages occasioned by the negligent mode in which work is done. [Cits.] 'Also, the cases which have construed the statutory exception in [OCGA § 51-2-5] have emphasized the word "express" and the necessity that such contractual obligation be placed upon the particular employer as opposed to any independent contractor . . . Since (the contractual) duty could be discharged in any effective manner, any act of the subcontractor in negligently (damaging Fields' walnut trees [or here damaging Faubion's inventory]) would be a collateral tort for which the prime contractor would not be liable because this would not be a violation of an express contract obligation falling within the exception provided in [OCGA § 51-2-5]. [Cits.]' " Id. at 876-77. Of course, by implication the court in *Fields* held that the language of the easement was not an express promise by the general contractor to be liable for every aspect of the independent contractor's conduct.

The court in *Uniroyal v. Hood*, 588 F2d 454 (5th Cir. 1979), made a like finding in similar circumstances. There, Hood agreed to erect additional warehouse space in accordance with certain specifications attached to and made a part of the agreement. Uniroyal argued that by agreeing to those specifications Hood guaranteed compliance with them, thus rendering itself liable as a matter of contract law for any noncompliance. The court found no merit in that argument: "The clear purpose of the agreement to build in accordance with the . . . specifications was to assure that Uniroyal ended up with the warehouse space for which it bargained. The agreement does not consti-

tute substantial evidence of an intent on the part of Hood . . . to guarantee an independent contractor's strict, day-to-day compliance with detailed construction procedures. To view it as such, we would have to assume that Hood . . . intended to bargain away a great part of the protection afforded an employer under Georgia law . . . Without a more definite expression of intent such an assumption is patently unreasonable." Id. at 464.

In the present case there is no evidence of any express contractual provision which would impose liability as a matter of contract on Piedmont. Since Faubion withdrew his allegations of negligence against Piedmont, there is utterly no merit to his argument that Piedmont somehow submitted itself to negligence liability by failing to object to that portion of the charge which was based upon OCGA § 51-2-5. Such a charge was applicable to the relationship between Chattahoochee and Tom's. We are aware of no provision of law which requires a party to object to charges not applicable to that party, and by failing to do so would thereby subject itself to liability on that ground.

3. Our ruling in Division 2 renders the appeal in Case No. 71466 moot.

*Judgment affirmed in Case No. 71464. Judgment reversed in Case No. 71465. Appeal dismissed in Case No. 71466. Deen, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

As to Division 1, the key for me is that the greatest portion by far of Faubion's market was overseas; he exported most of the parts rather than try to target a domestic market. Paliuca knew nothing about the foreign market, where the destroyed parts would have been offered for sale. Thus he clearly was not qualified to testify what portion or percentage of the destroyed inventory could have been sold in this market, which was Faubion's chosen market, or how long it would take to sell them. (The latter was important because there was testimony to the effect that at some point in time, there would be no market as the machines would no longer be in use in numbers large enough to make the business of parts sale profitable for Faubion.)

DECIDED FEBRUARY 26, 1986 —
REHEARING DENIED MARCH 12, 1986 —

*Leland G. Cook, Dana Garrett Diment,* for Faubion.
*R. Chris Irwin,* for Piedmont.
*Ronald Reid,* for Tom's Ornamental.

*William S. Sutton*, for Chattahoochee.