A89A1293. HUB MOTOR COMPANY, INC. v. BURDAKIN.
(386 SE2d 854)

BANKE, Presiding Judge.
The appellee sued the appellant to recover actual and punitive damages for the latter's alleged negligence in performing certain body repair work on his 1978 General Motors "Jimmy" motor vehicle.

jury returned a verdict in his favor, and this appeal followed.

The vehicle was damaged in a collision in December of 1983. It was thereafter taken to the appellant's body shop, where the appellant undertook to repair the damage in accordance with an appraisal report prepared by the motor vehicle insurance carrier for the other driver involved in the collision. The appellant finished work on the vehicle in March or April of 1984; but, due to a delay in receiving full payment from the insurance company, the appellee did not retrieve the vehicle from the appellant's premises until October of 1984. The appellee stated that he experienced difficulty in steering the vehicle on his way home and that he telephoned the appellant's body shop manager the following business day to complain that the vehicle had "serious problems." The manager testified that he told the appellee to bring the vehicle back. The appellee testified that he was afraid to drive the vehicle and that he insisted, without success, that the appellant send someone to pick it up.

Initially, the appellee asserted a claim for damages under the Georgia Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq., as well as a claim for actual and punitive damages based on the appellant's alleged negligence in performing the repairs. However, in a prior appearance of the case before this court, we affirmed a grant of partial summary judgment to the appellant with respect to the Fair Business Practices Act claim, concluding that "[t]he situation . . . involved only a repair agreement between the parties and did not involve the introduction of any act or practice into the stream of commerce." *Burdakin v. Hub Motor Co.*, 183 Ga. App. 90, 91 (357 SE2d 839) (1987). The case then proceeded to trial on the negligence claim. The jury returned a verdict in favor of the appellee for actual damages in the amount of $4,400 and punitive damages in the amount of $10,000. *Held*:

1. The appellant contends that it was entitled to a directed verdict on the issue of liability because "no evidence [was] presented . . . regarding the work to be performed or the work actually performed by the appellant." This contention is without merit. Through its vice president, the appellant acknowledged that it had agreed to repair the vehicle in accordance with the appraisal report prepared by the insurance company and that, in doing so, it had undertaken to fix the vehicle in such a manner that it would be "suitable for use." Similarly, the appellant's body shop manager conceded that the appellant had agreed to perform all of the repair work at issue. Yet, from the evidence presented by the appellee, which included expert opinion testimony from a structural engineer, it is evident that when the appellee picked up the vehicle there were bushings and rivets missing from the undercarriage, a stabilizer bar was loose, and the frame was severely cracked. The jury was authorized to conclude from the testi-

mony of the appellee and his expert that these defects rendered the vehicle unsuitable for driving. Accordingly, the appellant's motion for directed verdict on the issue of liability was properly denied.

2. The appellant contends that even if the evidence was sufficient to support a finding that the repairs were not performed properly, there nevertheless existed no basis for an award of punitive damages. With this contention we must reluctantly agree.

"Generally, punitive damages are not recoverable for breach of contract, even though the breach may be in bad faith. OCGA § 13-6-10; *Nestle' Co. v. J. H. Ewing & Sons,* 153 Ga. App. 328 (265 SE2d 61) (1980)." *Parsells v. Orkin Exterminating Co.,* 172 Ga. App. 74, 76 (322 SE2d 91) (1984). Although a failure to discharge a contractual obligation in a skillful and workmanlike manner may give rise, under appropriate circumstances, to a cause of action for negligence as well as for breach of contract, "[g]enerally, a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicto. [Cits.] Accordingly, . . . if there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained." *Mauldin v. Sheffer,* 113 Ga. App. 874, 877-8 (150 SE2d 150) (1966). Moreover, even if a tort action is maintainable, " '[m]ere negligence, although gross, will not alone authorize the recovery of punitive damages.' [Cits.]" *BLI Constr. Co. v. Debari,* 135 Ga. App. 299, 302 (217 SE2d 426) (1975). "To authorize the imposition of punitive damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. The latter expression relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Gilman Paper Co. v. James,* 235 Ga. 348, 351 (219 SE2d 447) (1975).

Although the jury could have determined from the evidence in this case that the repair work performed by the appellant was grossly deficient, the only damage which appellee suffered was his failure to receive a properly repaired vehicle. We are aware of no Georgia case in which a mere failure to perform a repair contract according to its terms, whether attributable to negligence or otherwise, has been held sufficient in and of itself to support an award of punitive damages. The cases relied upon by the appellee do not constitute authority for such a ruling, inasmuch as they involved conduct which was tortious in its own right. See, e.g., *Bill Spreen Toyota v. Jenquin,* 163 Ga. App. 855 (294 SE2d 533) (1982) (involving the fraudulent sale of a motor vehicle); *Hodges v. Effingham County Hosp. Auth.,* 182 Ga. App. 173 (355 SE2d 104) (1987) (involving personal injury resulting

from professional malpractice); *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188 (232 SE2d 62) (1977) (involving wilful interference with property rights). Because the present case does not involve such conduct and because the appellee suffered no additional injury to his person or property as a result of the appellant's breach of duty, we are constrained to hold that the trial court erred in denying the appellant's motion for directed verdict on the issue of punitive damages.

3. The appellant contends the trial court erred in allowing the appellee to introduce into evidence certain correspondence which he had sent to the appellant's vice president, in which he asserted that he had been advised by several of the vice-president's "peers" that his vehicle was not safe to drive and had been told by "three other auto dealer estimators" that the vehicle was not repairable. These statements clearly constituted hearsay, and we agree that the appellee failed to show how they could be considered relevant to explain any conduct legitimately at issue in the case, so as to render them admissible pursuant to OCGA § 24-3-2. However, we hold that the trial court's error in admitting the statements was harmless inasmuch as the appellant's liability for breach of the repair contract was established beyond dispute independently of these statements.

4. We reject the appellant's contention that a proper foundation was not established to enable the appellee to give his opinion regarding the value of the vehicle immediately before and after the performance of the repairs by the appellant. See generally *Dixon v. Williams*, 177 Ga. App. 702, 704-5 (340 SE2d 286) (1986). While the appellant complains that, in seeking to recover as actual damages the $6,000 difference between these two figures, the appellee failed to recognize that the vehicle would have been worth less after the collision than before even had it been repaired in a skillful and workmanlike manner, we note that the jury evidently took this into account by awarding the appellee actual damages in the amount of only $4,400. It has been held that "[a]utomobiles today are items well within the common knowledge of everyone including jurors." *Gwinnett Commercial Bank v. C & S Bank*, 152 Ga. App. 137, 141 (262 SE2d 453) (1979). See also *Bill Spreen Toyota v. Jenquin*, supra, 163 Ga. App. at 860 (4). Because the jury reduced the damages sought by the appellee in a manner which may reasonably be deemed curative of the deficiency of which the appellant complains, we hold that its award was supported by the evidence.

*Judgment affirmed in part and reversed in part. Sognier and Pope, JJ., concur.*

Decided September 5, 1989 —
Rehearing denied September 25, 1989 —

*Glenn S. Bass*, for appellant.
*Richard T. Taylor, Albert R. Sacks*, for appellee.