A90A1162, A90A1163. CARTER et al. v. ALLSTATE INSURANCE COMPANY; and vice versa.
(399 SE2d 500)

BANKE, Presiding Judge.

On December 20, 1987, a small fire occurred in the home of Walter and Jean Carter, resulting in substantial smoke damage throughout the house and some minor structural damage to the kitchen and breakfast room. The following day, Mr. Carter reported the fire to Ms. Terry Morris, a small claims adjuster employed by Allstate Insurance Company, which had issued a policy of homeowner's insurance covering the property. The Carters' daughter was planning to marry between Christmas and New Year's Day, and because they were expecting a large number of visitors in connection with the wedding the family was anxious to have the smoke damage cleaned from the house before Christmas. Ms. Morris informed Mr. Carter that Allstate would not be able to send an adjuster to the home to review the loss within that time frame but gave him the name of at least two contractors who would be authorized to perform the necessary clean-up work without the involvement of an adjuster. Later that day, one of these contractors, Billy Howell of H & H Construction Company, spoke with Mrs. Carter and made arrangements with the couple to perform the clean-up work. Mr. Howell was apparently successful in completing this job before Christmas and was paid by Allstate for his services in that regard.

In January of 1988, after discussing the matter with Mr. Carter, Mr. Howell contacted Ms. Morris to ask whether Allstate was planning to send out an adjuster to handle the structural damage portion of the Carters' claim. Ms. Morris answered this question in the negative and informed Mr. Howell that he would be authorized to commence the repair work forthwith if the Carters wanted him to. Mr. Howell subsequently received authorization from the Carters to pro-

ceed; however, he did not actually undertake the work himself but instead subcontracted the job to his son, Ken, who was also in the construction business. At the direction of Allstate, Mr. Howell submitted both his preliminary estimates of the repair costs and his actual bills for the work itself directly to Allstate.

Part of the repair work involved the replacement of the vinyl floor covering in the kitchen and breakfast area of the home. This floor covering had been glued in place, and "chunks" of the backing remained affixed to the floor after it was pulled up. Ken Howell undertook to remove this backing by sanding it. Unfortunately, it was composed at least partially of asbestos, with the result that asbestos dust was released throughout the house.

On February 8, 1988, Mrs. Carter contacted Ms. Morris and told her that she and her husband were dissatisfied with the manner in which the repair work was being performed, in part because of the large amount of dust associated with it. (It appears that mention was made during this conversation of the presence of asbestos in the dust but that neither woman was cognizant at the time of the health threat involved.) Ms. Morris responded to Mrs. Carter's concerns by telling her that if she and her husband were dissatisfied with the work they should employ another contractor in whom they had confidence to finish it. The Carters did so, retaining Cope Brothers Construction Company to complete the repair work. Allstate subsequently paid Cope Brothers for its services in this regard but did not pay the Howells for their repair work.

After the structural repairs were completed, Mr. Carter became aware of the possibility that the old vinyl floor covering may have contained asbestos and had a sample of it tested. This testing revealed the presence of asbestos in the floor covering but not the amount, if any, released into the air. On March 3, 1988, the Carters had a sample of air from their home analyzed and learned that it contained over five times more asbestos than is normally considered safe. The couple had by this time notified Allstate of their concerns about the asbestos dust and had been advised by Allstate to move out of the residence if they were apprehensive about their safety.

Mr. Carter thereafter consulted an expert in the removal of asbestos contamination, who informed him that much of the interior of the home would have to be stripped and its furnishings, particularly those containing fabric or electrical wiring, destroyed. On March 5, the Carters moved into a trailer, and the decontamination work commenced. Following the completion of this work, Cope Brothers Construction Company returned to the home, repaired the physical damage caused by the decontamination procedures, and installed or caused to be installed replacement carpeting, fixtures, and appliances. The Carters then submitted to Allstate an itemized list of all the ex-

penditures they had incurred in ridding the home of the asbestos contamination.

On October 18, 1988, Allstate filed a declaratory judgment action in the United States District Court for the Northern District of Georgia seeking to determine its rights, duties and obligations in connection with the asbestos contamination claim, naming as defendants the Carters, their daughter, her new husband, and a family friend, all of whom had lived in the house for several weeks following the sanding. On November 7, 1988, these declaratory judgment defendants joined in filing the present action in the Superior Court of Whitfield County against Allstate, the Howells, and the Howells' respective construction companies, seeking to be compensated for the property loss they had allegedly sustained and to recover damages for the increased risk of cancer to which they had allegedly been exposed as a result of the contamination. The complaint is in four counts. In Count 1, the plaintiffs allege that the contamination was caused by the Howells' negligence, and they seek to hold Allstate vicariously liable for that negligence under the doctrine of respondeat superior. In Count 2, the Carters seek to recover for the damage to their home on the theory that the defendants breached a "warranty of correct construction and repair," and in addition they seek to recover policy benefits from Allstate for their personal property losses resulting from the asbestos contamination. Count 3 is a claim for attorney fees and litigation expenses based on allegations of bad faith, stubborn litigiousness and gross negligence; and, finally, Count 4 is a claim by the Carters' son-in-law for "vindictive damages" for the "injury to his peace, happiness and feelings" he has allegedly suffered due to his awareness of having breathed "the deadly cancer causing" asbestos dust.

Cross-motions for summary judgment were filed in both the state and the federal actions; and on September 12, 1989, the federal district court entered an order denying the motions. While concluding as a matter of law that no master-servant relationship had existed between Allstate and the Howells so as to render Allstate vicariously liable for their alleged negligence, the district court ruled that Allstate might nevertheless be considered liable for the contamination damage on the theory that it had breached "a *contractual* duty to see that the repairs to the Carter home were done with due care." In reaching this conclusion, the district court relied on OCGA § 51-2-5 (3), under which an employer may be considered liable for the negligence of an independent contractor "[i]f the wrongful act is the violation of a duty imposed by express contract upon the employer. . . ." The district court determined that if in fact Allstate undertook to repair the structural damage to the home caused by the fire, as opposed to merely paying the Carters for the damage, then in so doing it assumed "a contractual duty to see that the repairs were properly com-

pleted, [with the result that] the independent contractor rule would not relieve [it] of vicariously (sic) liability."

A month after the district court entered its ruling, the superior court ruled on the parties' cross-motions for summary judgment in the present action. While adopting the statement of facts set forth in the district court's order and agreeing with the district court's conclusion that no master-servant relationship had existed between Allstate and the Howells, the superior court took issue with that court's conclusion "that OCGA § 51-2-5 (3) applies to the facts of this case so as to possibly hold the employer, Allstate, liable for the negligent acts of the independent contractor Howell." In this regard, the court was persuaded by cases such as *Faubion v. Piedmont Engineering &c. Corp.*, 178 Ga. App. 256 (2) (342 SE2d 718) (1986), and *Fields v. B & B Pipeline Co.*, 147 Ga. App. 875 (250 SE2d 582) (1978), that the contractual duty referred to in § 51-2-5 (3) must be *expressly* imposed by the contract and that the mere breach by an independent contractor of an implied contractual duty to perform his work in a skillful, diligent and workmanlike manner would not support the imposition of vicarious liability against the employer. The superior court accordingly granted Allstate's motion for summary judgment with respect to the tort claims asserted in the complaint. However, notwithstanding its conclusion that OCGA § 51-2-5 (3) was inapplicable to the case, the superior court agreed with the district court that Allstate could nevertheless be held liable for the asbestos contamination damage under a breach of contract theory, concluding that if it undertook to repair the original fire damage to the home and then discharged that undertaking in such a manner as to damage the plaintiffs, "then [it] would be liable in damages for breach of contract notwithstanding an independent contractor did the work." Allstate has appealed from the latter portion of the superior court's order, while the plaintiffs have cross-appealed from the former. *Held*:

1. As it is apparent without dispute from the record that Allstate did not retain or exercise any right of control over the time, manner or method of performance of the Howells' work, we hold that the trial court was correct in its conclusion that Allstate could not be held vicariously liable for the Howells' alleged negligence under the doctrine of respondeat superior. Accordingly, we affirm the grant of Allstate's motion for summary judgment with respect to the tort claims asserted in Count 1 of the complaint. Accord *Caruso v. Aetna Cas. &c. Co.*, 181 Ga. App. 829 (354 SE2d 18) (1987). See generally OCGA §§ 51-2-4; 51-2-5 (5).

2. Although there is no basis upon which Allstate could be held vicariously liable to the Carters *in tort* for the Howells' alleged negligence, we also agree with the trial court that a fact issue nevertheless remains as to whether, having undertaken to repair the original fire

damage to their home, it breached a contractual obligation to perform those repairs (or to see to it that they were performed) in a skillful and workmanlike manner. Allstate was entitled under the terms of the policy either to pay the Carters for the fire damage or to repair the damage itself; and in the event it chose the latter option rather than the former, it necessarily assumed a duty to restore the home to a habitable condition. As the evidence of record in the present case does not conclusively negate the Carters' contention that it was Allstate rather than they who retained Billy Howell to repair the structural damage caused by the fire, we conclude that a factual dispute exists as to which of these two options Allstate chose to exercise. Compare *Owens v. Svc. Fire Ins. Co.*, 90 Ga. App. 553 (83 SE2d 249) (1954) (holding that a release executed by an insured, acknowledging the correctness of an automobile repair estimate and directing his insurer to pay the amount of estimate, less the deductible, over to the repair company in satisfaction of the insurer's obligations under the policy, operated to relieve the insurer of any further responsibility in the matter). Accordingly, we hold that the trial court properly denied Allstate's motion for summary judgment with respect to the breach of warranty claim contained in Count 2 of the complaint.

We reject Allstate's contention that this court's decision in *Caruso v. Aetna Cas. &c. Co.*, supra, constitutes authority for a contrary holding. In that case it was apparent without dispute from the record that no contractual relationship had existed between the insurer and the contractor, while in the present case there is at least some basis for an inference that the contractor was retained by the insurer rather than the insured. We consider Allstate's reliance on such cases as *Faubion v. Piedmont Engineering &c. Corp.*, supra, and *Dennis v. Malt*, 196 Ga. App. 263 (395 SE2d 894) (1990), to be similarly misplaced. The holding in *Faubion* was that a general contractor which had been hired by a property owner to repair a fire-damaged warehouse was not liable for personal property damage caused by an independent subcontractor, where "the work which was the subject of the [parties'] contract was completed with no defects. . . ." Id. at 258. In the present case the repair work which was the subject of the alleged contract was not completed without defects. The decision in *Dennis v. Malt* arose from a suit by a store employee against a general contractor hired by the store to perform certain structural work, seeking to recover for personal injuries he had allegedly sustained due to the negligence of a subcontractor. As there was no contractual relationship whatever between the plaintiff and the defendant in that case, the plaintiff's claim clearly was predicated solely on tort principles.

3. Allstate contends that it has no liability to the Carters for the loss at issue in this case because the policy expressly excluded cover-

age for contamination damage. Inasmuch as this issue was not addressed by the trial court, we will not address it in this appeal. We note, however, that the claim for policy benefits set forth in the Carters' complaint relates only to their personal property losses caused by the asbestos contamination. Their claim against Allstate for the damage to their home is predicated not on the theory that it qualifies as a covered loss under the policy but on the theory that, having undertaken to effect certain repairs to their home for the purpose of discharging an admitted policy obligation arising from the fire, it failed to complete those repairs in a diligent and workmanlike manner.

4. It is apparent from the record that there is a bona fide controversy between the parties as to whether Billy Howell was employed by the Carters or by Allstate. Accordingly, there being no suggestion of any bad faith on the part of Allstate in connection with this matter, we hold that the trial court erred in denying Allstate's motion for summary judgment with respect to the plaintiffs' claim for litigation expenses based on bad faith and stubborn litigiousness. Accord *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746 (1) (365 SE2d 540) (1988); *Nestle' Co. v. J. H. Ewing & Sons*, 153 Ga. App. 328 (4) (265 SE2d 61) (1980). See generally OCGA § 13-6-11.

5. There is similarly no evidence that Allstate was itself guilty of any negligence in connection with the work performed on the house, much less the sort of "wilful misconduct, malice, fraud, wantonness, . . . oppression, or . . . conscious indifference to consequences" which is necessary to authorize the imposition of punitive damages. See *Gilman Paper Co. v. James*, 235 Ga. 348, 351 (219 SE2d 447) (1975); *Hub Motor Co. v. Burdakin*, 192 Ga. App. 872, 874 (2) (386 SE2d 854) (1989). Accordingly, we hold that Allstate was also entitled to summary judgment with respect to the claim for "vindictive damages."

*Judgment affirmed in part and reversed in part. Birdsong and Cooper, JJ., concur.*

## ON MOTION FOR REHEARING.

On motion for rehearing, Allstate insists that our holding in the present case cannot be reconciled with *Caruso v. Aetna Cas. &c. Co.*, 181 Ga. App. 829 (354 SE2d 18) (1987). In *Caruso*, the contractor categorically denied that there had been any contract between it and the insurer, and the only evidence offered by the insured to the contrary consisted of his own testimony that the insurer's claims adjuster had recommended the contractor to him and that "when [the contractor's president] contacted him and indicated that [the insurer] had authorized him to repair the roof, he understood that [the insurer] had hired [the contractor] for the job." Id. at 830. Of course, the insured's *un-*

*derstanding* in that case that the contractor had been hired by the insurer did not constitute evidence to that effect. Such evidence does, however, exist in the present case, in the form of the contractor's undisputed testimony that Allstate had instructed him to proceed with the job subject to the Carters' approval and to submit his repair estimates and bills directly to Allstate rather than to the Carters. While we recognize that the court stated in *Caruso* that the breach of contract theory of recovery asserted against the insurer by the insured had been "eviscerated by the fact that [the insurer was] not liable for the negligence of the independent contractor," id. this statement must be considered mere dictum in light of the undisputed evidence that the insurer did not in fact have any contractual relationship with the contractor.

Allstate also questions on motion for rehearing how it could "be expected to comply with its policy contract and see to it that the repairs are performed in a skillful and workmanlike manner yet exercise no control over the time, manner and method or (sic) the performance of the work." It is obviously possible to monitor an independent contractor's performance without transforming him into an employee. " '[M]erely taking steps to see that the contractor carries out his agreement, by supervision of the intermediate results obtained, or reserving the right of dismissal on grounds of incompetence, is not such interference and assumption of control as will render the employer liable. [Cits.]' " *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 881 (345 SE2d 71) (1986). See also *State of Ga. v. Goolsby*, 191 Ga. App. 161, 163 (381 SE2d 299) (1989).

*Motion for rehearing denied.*

DECIDED OCTOBER 30, 1990 —
REHEARINGS DENIED NOVEMBER 27, 1990 — 

*Mitchell, Coppedge, Wester, Bisson & Miller, Warren N. Coppedge, Jr., William F. Jourdain*, for appellants.

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, E. Alan Miller*, for appellee.

