A01A1284. OGDEN v. AUTO-OWNERS INSURANCE COMPANY.
(554 SE2d 575)

RUFFIN, Judge.

Ronald Ogden appeals from the trial court's grant of summary judgment to Auto-Owners Insurance Company ("Auto-Owners"). For reasons that follow, we reverse.

We review the trial court's summary judgment ruling de novo, considering the evidence with all reasonable inferences and conclusions in favor of Ogden, the party opposing summary judgment.[1] Viewed in this manner, the record shows that a fire damaged Ogden's house on May 25, 1992. Ogden reported the fire to Auto-Owners, his homeowners insurance carrier, and Auto-Owners prepared a Proof of Loss form, which placed the full cost of repair or replacement at $45,595. According to Ogden, Auto-Owners or its agent instructed him to have the repair work performed by Livingston Construction Company ("Livingston Construction"). The work proceeded, and Auto-Owners issued checks made out jointly to Ogden, Livingston Construction, and Ogden's mortgagee totaling $32,506.92. The record shows, however, that Auto-Owners held back "depreciation" totaling $12,689 until Ogden executed the Proof of Loss statement.

On December 21, 1992, Richard Kelly, Ogden's claims adjuster,

---

[1] *Corouthers v. Doe,* 244 Ga. App. 491 (536 SE2d 165) (2000).

sent Ogden the Proof of Loss form and indicated that the $12,689 check would be forwarded once Ogden executed and returned the form. Approximately two months later, Kelly wrote Thomas Jarriel, Ogden's attorney, noting that he had previously sent Ogden a Proof of Loss statement, but that he had not yet received the executed form from Ogden. Kelly again stated that the $12,689 check would be released once Ogden returned the form. On March 17, 1993, Kelly wrote Jarriel yet again. At that point, Kelly informed Jarriel that Ogden had not sent back the Proof of Loss form and that if Ogden wanted to collect the $12,689, Kelly needed the Proof of Loss returned within 15 days. Kelly further stated that Auto-Owners would consider bills submitted only within the next 15 days, after which the file would be closed.

Ogden submitted no additional bills within the 15-day period, and Kelly closed the file. Subsequently, however, Ogden apparently sought to amend the original Proof of Loss statement. On April 12, 1993, Kelly alerted Jarriel that he viewed the amendment as a rejection of the original Proof of Loss.

In the meantime, a dispute arose between Ogden and Livingston Construction, which, in January 1993, sued Ogden for over $31,000 allegedly owed on their contract to repair the fire damage. Ogden answered and counterclaimed, asserting that Livingston Construction failed to perform the repair work in a "professional, workman-like manner" and that the "repair work . . . [would] itself require extensive repairs." At some point, Jarriel told Don Nolan, Ogden's new claims adjuster, about the dispute. On August 18, 1993, Nolan wrote to Jarriel, indicating that Auto-Owners refused to become involved in the Livingston Construction lawsuit. In addition, Nolan stated that "[s]ince the statute [of limitation] has run on the time frame within which to recover the withheld depreciation [of $12,689], that recovery will not be made available to your client." Nevertheless, communications between Jarriel and Nolan continued, and on March 3, 1994, Nolan informed counsel by letter that, "[w]ith regard to the withheld depreciation on the dwelling of $12,689.00, it is possible that Auto Owners Insurance Company would consider payment."

Approximately six months later, Ogden sued Auto-Owners, alleging that the insurer did not pay for the loss under the policy and failed to have the repair work performed in a workmanlike manner.[2] During the pendency of this action, the Livingston Construction lawsuit proceeded to trial. On October 17, 1995, a jury found in favor of

---

[2] At first glance, Count 2 of Ogden's complaint appears to allege misrepresentation or fraud. During the summary judgment proceedings, however, Ogden clarified this claim as alleging that Auto-Owners breached a contractual duty to have the repair work completed in a workmanlike manner.

Livingston Construction in the amount of $23,400 and for Ogden on his counterclaim in the amount of $3,800.

Auto-Owners subsequently moved for summary judgment in this action. Granting the motion, the trial court concluded that a one-year limitation period contained in the insurance contract, as well as the judgment in the Livingston Construction lawsuit, barred Ogden's claims as a matter of law.

1. Ogden's homeowners policy provided that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after inception of the loss." On summary judgment, Auto-Owners argued that this contractual limitation precluded Ogden's claims because suit was not filed within one year of May 25, 1992, the date of the loss.[3] Ogden countered that Auto-Owners waived the limitation provision.[4]

We have consistently found contractual limitation periods in insurance contracts to be valid and binding.[5] Those periods of limitation, however, can be waived.[6] When an insurer's conduct raises a factual question as to whether the insurer "insisted on strict compliance with the limitation provision," a jury issue remains as to waiver.[7]

In granting summary judgment, the trial court found no evidence in the record that Auto-Owners waived its right to rely on the contractual limitation period. On August 18, 1993, Nolan informed Jarriel that, because the one-year limitation period had expired, Ogden would not be able to recover the $12,689 that Auto-Owners had withheld from the repair payments. At that point, Auto-Owners clearly sought strict compliance with the limitation period. The record shows, however, that discussions between Auto-Owners'

---

[3] The trial court initially denied Auto-Owners' summary judgment motion. Auto-Owners later renewed its motion, and the trial court reconsidered that ruling.

[4] Ogden also argued below that Auto-Owners made a "new promise to pay" that renewed his right to bring suit. The trial court rejected this argument, finding "no evidence of a new agreement in writing." See OCGA § 9-3-110 ("A new promise, in order to renew a right of action already barred or to constitute a point from which the limitation shall commence running on a right of action not yet barred, shall be in writing, either in the party's own handwriting or subscribed by him or someone authorized by him."). Although Ogden raises this "new promise to pay" argument on appeal, he has made no effort to identify the "new promise," describe when it occurred, or point to any evidence of it in the record. We find no error in the trial court's decision to reject this argument.

[5] See *Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463, 464 (477 SE2d 887) (1996); *Suntrust Mtg. v. Ga. Farm &c. Ins. Co.*, 203 Ga. App. 40, 41 (416 SE2d 322) (1992).

[6] *Appleby*, supra.

[7] Id. at 464-465. See also *Lynn v. Ga. Farm &c. Ins. Co.*, 189 Ga. App. 209, 211 (1) (b) (375 SE2d 259) (1988) (given insurer's conduct before and after contractual limitation period expired, " 'there is evidence that could lead a jury to believe the intent of the parties was to negotiate a settlement, thus impliedly waiving the contractual limitation' ").

adjuster and Ogden continued after the August 18, 1993 letter. As a result of those discussions, Nolan wrote Jarriel on March 3, 1994, stating that "it is possible that [Auto-Owners] would consider payment" of the $12,689.

We recognize that an insurer does not waive a contractual limitation period simply by "engaging in negotiations looking toward a possible settlement of [a] loss or claim."[8] In this case, however, Nolan denied liability based on the limitation period, then, despite expiration of that period, engaged in further discussions and informed Ogden's counsel that Auto-Owners might consider payment. These particular circumstances raise a question of fact as to waiver.[9] Accordingly, the trial court erroneously granted summary judgment to Auto-Owners based upon the contractual limitation period.[10]

2. The trial court further concluded that the final judgment rendered in the Livingston Construction lawsuit barred Count 2 of Ogden's complaint. Again, we disagree.

"The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action."[11] Res judicata thus requires a claimant to bring in one action all claims against a party or its privies that arise out of a particular set of circumstances.[12]

Pursuant to *Carter v. Allstate Ins. Co.*,[13] Ogden claimed in Count 2 that, "having undertaken to repair the original fire damage to [his] home, [Auto-Owners] breached a contractual obligation to perform those repairs (or to see to it that they were performed) in a skillful and workmanlike manner."[14] According to Auto-Owners, under this theory of recovery, it is responsible for Livingston Construction's allegedly insufficient repairs and is thus in privity with Livingston Construction. Auto-Owners asserts, therefore, that Ogden could have brought — and, under the doctrine of res judicata, was required to

---

[8] OCGA § 33-24-40 (3). See also *Appleby*, supra.

[9] See *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989) ("A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights.") (punctuation omitted).

[10] Neither party addressed below whether the contractual limitation period applies to Ogden's allegations in Count 2 that Auto-Owners failed to ensure proper repair of his home. See *Lee v. Safeco Ins. Co.*, 144 Ga. App. 519, 521 (2) (241 SE2d 627) (1978) (refusing to apply one-year contractual limitation period to claim that insurance company failed to properly repair or restore the insured's home). Even if the limitation period applies to that claim, however, a question of fact remains as to waiver.

[11] *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865 (1) (463 SE2d 5) (1995).

[12] *Sorrells Constr. Co. v. Chandler Armentrout & Roebuck, P.C.*, 214 Ga. App. 193 (447 SE2d 101) (1994).

[13] 197 Ga. App. 738 (399 SE2d 500) (1990).

[14] Id. at 741-742 (2).

bring — this claim in the Livingston Construction lawsuit.

Even assuming, without deciding, that Auto-Owners and Livingston Construction are privies, we cannot find that res judicata precludes Ogden's claim. In the prior lawsuit, Ogden asserted that Livingston Construction failed to perform the work called for by the repair contract in a professional, workmanlike manner. Ogden has alleged a different claim against Auto-Owners. Here, Ogden claims that Auto-Owners breached a contractual duty arising from the insurance contract to restore Ogden's home to a habitable condition.[15] Although both claims relate to Ogden's fire-damaged house, they are not "identical causes of action" because they stem from two separate contracts.[16] Under these circumstances, Ogden's failure to join Auto-Owners in the Livingston Construction lawsuit does not constitute res judicata as to Count 2 in this case.

Furthermore, to the extent the trial court based its summary judgment ruling on collateral estoppel, it erred.[17] Collateral estoppel "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."[18] The trial court determined that Ogden's "adverse result on his counterclaim in the previous suit [with Livingston Construction] precludes his current suit alleging faulty workmanship against Auto-Owners." The record shows, however, that Ogden did not lose his counterclaim against Livingston Construction; in fact, the jury found *in his favor* and awarded him $3,800 on the claim.

We cannot conclude that the Livingston Construction jury rejected Ogden's claim that his home was repaired in a faulty manner. The judgment in that case, therefore, does not collaterally estop Ogden from arguing that Auto-Owners breached a contractual duty to ensure proper, workmanlike repairs.[19] Accordingly, the trial court erred in granting Auto-Owners summary judgment on this ground.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

---

[15] See id. at 742.

[16] *Waldroup*, supra at 865. See also *Nationwide-Penncraft, Inc. v. Royal Globe Ins. Co.*, 162 Ga. App. 555, 556 (1) (291 SE2d 760) (1982) ("Here we are involved with individual contracts of insurance. Within the period of the appropriate contractual or statutory limitation, a separate suit could conceivably be brought on each contract, since *each constitutes a cause of action* rather than a theory of recovery.") (emphasis supplied).

[17] Although the trial court did not specifically reference collateral estoppel in its summary judgment order, it found that Ogden could not relitigate issues already decided adversely to him in the Livingston Construction lawsuit. Collateral estoppel, therefore, apparently factored into the trial court's ruling.

[18] *Waldroup*, supra at 866-867 (2).

[19] The only issue before us is whether the trial court erred in granting Auto-Owners' summary judgment motion. We do not address whether collateral estoppel precludes litigation of any particular issues in this lawsuit.

DECIDED AUGUST 31, 2001 —
RECONSIDERATION DENIED OCTOBER 5, 2001 —

*Lane & Jarriel, Thomas F. Jarriel,* for appellant.
*Bullard, Moody, Long & Garcia, Daniel Bullard IV, Miguel A. Garcia, Jr.,* for appellee.