A06A0335, A06A0336. MORGAN v. RICHARD BOWERS & COMPANY; and vice versa.
(634 SE2d 415)

PHIPPS, Judge.

The real estate broker Richard Bowers & Company sued its former agent Steven R. Morgan for breach of contract, among other things, arising from Morgan's receipt of commissions from two clients who renewed leases with Morgan's assistance after his departure

---

from Bowers & Co. Morgan then counterclaimed for unrelated commissions owed by Bowers & Co. After Morgan moved for summary judgment, the trial court ruled in Morgan's favor as to commissions Morgan received from one of the two clients and in Bowers & Co.'s favor as to commissions he received from the other. Both parties appealed. Because we find that Bowers & Co. is barred from receiving commissions from either client, we reverse in Morgan's appeal in Case No. A06A0335 and affirm in Bowers & Co.'s appeal in Case No. A06A0336.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.[1]

So viewed, the record shows that Bowers & Co. hired Morgan as a real estate agent in 1982. The parties' employment agreement contained the following provision:

> *Departure Arrangements.* Should you decide to leave [Bowers & Co.] at some point, the existing commission accounts would be paid to you on the basis of you receiving 50% of the commissions and [Bowers & Co.] receiving 50% percent of the commissions. In other words, there would be no discount. This policy would apply through the lease term; however, should renewals and expansions take place, you would be discounted a very small amount, where you would then receive 45% of the monthly commissions and [Bowers & Co.] would receive 55% of the monthly commissions. All deals that are currently active — active being defined as where you had shown a prospective user specific properties or had registered possible sales on land or buildings with owners — would be completed through [Bowers & Co.].

The agreement was apparently amended in 1984 to grant Morgan the status of an independent contractor, with all other original terms of the 1982 agreement remaining "in full force and effect."

While still employed by Bowers & Co., Morgan represented Bristol Myers in connection with their lease at Atlanta Plaza. The original commission agreement concerning Atlanta Plaza provided that Bowers & Co. would be entitled to renewal commissions only if Bristol Myers "expressly recognize[d]" Bowers & Co. as its "sole representative for purposes of such transaction." From 1998 through

---

[1] *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

the end of 2000, Morgan also showed potential office space to Meadows Ichter & Trigg, later known as Meadows Ichter & Bowers and Balch & Bingham ("MIB"). MIB considered a number of the locations shown by Morgan, the last of which was Ivy Place.

In February 2001, Morgan left Bowers & Co. In a memorandum memorializing his departure, Morgan listed those "open and pending transactions" which were "to be completed through Richard Bowers & Co." The list attached to the memorandum included an "active deal" concerning MIB, and described its "status" as follows: "They are interested in possible purchase of Ivy Place. Currently running analysis for them." MIB did not close on Ivy Place, however, renewing its lease at 8 Piedmont Center instead.

After leaving Bowers & Co. in February 2001, Morgan worked for less than a year for CSFB Realty Corporation, and then formed his own company, Morgan Realty Advisors, LLC. In June 2002, MIB signed a new lease at 14 Piedmont Center. Though Bowers & Co. had solicited MIB earlier that year, it was not involved in this transaction. MIB retained Morgan to assist in final negotiations for the 14 Piedmont Center lease and paid Morgan's new company a commission after its execution. In the fall of 2002, Bristol Myers also retained Morgan concerning a relocation from or renewal at Atlanta Plaza. Bristol Myers eventually decided to renew at Atlanta Plaza, paying Morgan's company a commission for his work.

Bowers & Co. later sued Morgan on theories of breach of contract and restitution, claiming that Morgan had violated the terms of the 1982 employment agreement when he failed to pay it commissions on renewals and deals that were still "active" at the time he left Bowers & Co. Bowers & Co. also sought the recovery of litigation costs under OCGA § 13-6-11 and the return of files it claimed Morgan had taken when he left the company. Morgan answered and counterclaimed for commissions owed by Bowers & Co. and his own litigation costs as well as punitive damages. The trial court granted summary judgment to Bowers & Co. on the Bristol Myers deal, granted summary judgment to Morgan on the MIB deal and other renewal commissions owed by Bowers & Co., and denied summary judgment to Morgan on the matter of the files. The trial court did not rule on the matters of litigation costs or punitive damages because issues remained for trial.

*Case No. A06A0335*

1. Morgan attacks the grant of summary judgment to Bowers & Co. concerning the Bristol Myers deal on a number of grounds, including that he did not breach the employment agreement and that

Bowers & Co.'s construction of the departure provision would render the contract unenforceable under Georgia real estate law. We agree.

Because the construction of a contract is a question of law for the court to resolve based on the intent of the parties as reflected in the agreement, we review the trial court's determination on this question de novo.[2] "Where contract language is unambiguous, construction is unnecessary and the court simply enforces the contract according to its clear terms."[3] If the contract language is ambiguous, however, we apply the rules of construction set forth in OCGA § 13-2-2.[4]

The departure provision at issue discusses three categories of accounts: "existing commission accounts" at Bowers & Co., 50 percent of which would be payable "to [Morgan]" on his departure; commissions on "renewals and expansions," 55 percent of which would go to Bowers & Co. and 45 percent to Morgan; and "active deals," for which Bowers & Co. would assume all responsibility and take all commissions later paid. The question, then, is whether Bowers & Co. could collect a 55 percent share of the commission from the Bristol Myers renewal at Atlanta Plaza even when this renewal was undertaken by Morgan when he was no longer employed by Bowers & Co. The employment contract is subject to only one reasonable construction on this point: because Morgan obtained the Bristol Myers renewal on his own well after leaving Bowers & Co., he owed his former employer no commission as to that renewal. In other words, the contract contemplates Bowers & Co. paying renewal commissions to Morgan after his departure as to clients he had placed in properties while at Bowers & Co., but does not contemplate Bowers & Co. sharing in commissions earned by Morgan on his own after his departure from Bowers & Co., even as to clients renewing such properties.[5]

Bowers & Co.'s wished-for construction of the departure provision would also run afoul of OCGA § 43-40-19 (c), which permits a real estate agent to pay his former broker commissions only when the former broker and the new broker enter into a written agreement to that effect:

> A licensee transferring to a new broker may continue to act as a licensee for the former broker with regard to transactions begun prior to the transfer, provided: (1) Both brokers agree in writing to the licensee's actions on behalf of the

---

[2] *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); OCGA § 13-2-1.

[3] *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292, 292-293 (609 SE2d 103) (2005) (citation omitted).

[4] *Deep Six*, supra, 246 Ga. App. at 73 (2).

[5] See *Marcre Sales Corp. v. Jetter*, 223 Ga. App. 70, 72 (1) (476 SE2d 840) (1996) (renewal and termination clause of employment contract was unambiguous).

former broker; (2) The transactions on which the licensee will act on behalf of the former broker are enumerated in the written agreement between the brokers; (3) The former broker agrees in writing to assume full responsibility for the licensee's activities in the enumerated transactions; and (4) The written agreement expresses the terms under which the licensee shall be compensated by the former broker.[6]

It is undisputed here that neither Morgan nor Morgan's company entered into a written agreement with Bowers & Co. to share commissions on deals struck after Morgan's departure from Bowers & Co. It is also the case that under the original commission agreement, Bowers & Co. would receive a commission for renewals only if Bristol Myers employed the company as to those renewals.

It has long been our practice to interpret contracts "so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect."[7] Because we cannot countenance a construction of the agreement that would render it in violation of OCGA § 43-40-19, and because the contract's unambiguous terms do not govern the Bristol Myers renewal at Atlanta Plaza, we reverse the trial court's grant of summary judgment to Bowers & Co. concerning that renewal.[8]

2. Morgan also argues that the trial court erred when it denied him summary judgment on Bowers & Co.'s claim that he improperly retained its files. During discovery, Bowers & Co. admitted that it had been unable to determine what files were taken. Because Morgan has pointed out an absence of evidence to support Bowers & Co.'s claim concerning the files, the trial court erred when it denied Morgan summary judgment on that claim.[9]

3. Because Bowers & Co. cannot prevail on any of its claims against Morgan, it cannot recover litigation costs against Morgan under OCGA § 13-6-11.[10] The trial court therefore erred when it denied Morgan summary judgment on this claim.

---

[6] OCGA § 43-40-19 (c).

[7] *Roland Well Drilling v. Murawski*, 193 Ga. App. 38, 40 (386 SE2d 872) (1989) (punctuation omitted), quoting *Central Ga. &c. Corp. v. Ga. Power Co.*, 217 Ga. 171, 173 (121 SE2d 644) (1961).

[8] See *Marcre*, supra, 223 Ga. App. at 72 (1) (granting employee's motion for summary judgment concerning renewal and termination clause).

[9] See *Evans v. Heard*, 264 Ga. 239, 239-241 (442 SE2d 753) (1994) (granting defendant's motion for summary judgment when plaintiff admitted in interrogatory response that he had not preserved any physical evidence concerning automobile accident).

[10] See *Arford v. Blalock*, 199 Ga. App. 434, 437 (4) (405 SE2d 698) (1991).

*Case No. A06A0336*

4. In its cross-appeal, Bowers & Co. argues that the trial court erred when it granted Morgan summary judgment concerning the MIB deal. We disagree.

The undisputed facts are that MIB turned down Ivy Place, the property Morgan was showing them at the time he left Bowers & Co. Instead, MIB first renewed its lease at 8 Piedmont Center and then signed a new lease at 14 Piedmont Center. As the managing partner of MIB testified, "There was no Ivy Place transaction. The Ivy Place transaction consisted of us going and looking at a building and deciding that it was not appropriate for our needs."

In his deposition testimony, the principal of Bowers & Co. asserted that "the deal is the client," and that even an admittedly "dead" deal can spring magically back to life when the client "[goes] back out in the market after [a] renewal and start[s] looking for space." By the contract's own terms, however, the term "active deal" includes transactions concerning "specific properties" under consideration at the time the agent leaves the former broker. The term "active deal" must therefore exclude all transactions initiated by the client months or years after it has rejected the "specific property" known as Ivy Place. Thus we hold that Morgan owes Bowers & Co. nothing as to MIB's Piedmont Center renewal and affirm the trial court's grant of summary judgment on this claim.

5. Bowers & Co. has not appealed the trial court's award of $64,152.42 in overdue commissions to Morgan. That award therefore stands as rendered.[11]

*Judgment reversed in Case No. A06A0335. Judgment affirmed in Case No. A06A0336. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 20, 2006 —
RECONSIDERATION DENIED JULY 14, 2006 — ▆▆▆▆▆▆▆

*Withrow, McQuade & Olsen, Terrence McQuade, Lawrence H. Cooper*, for appellant.
*Decker, Hallman, Barber & Briggs, Richard P. Decker, Stacy E. Hyken*, for appellee.

---

[11] See *Kelley v. Gen. Motors Acceptance Corp.*, 145 Ga. App. 739, 741 (5) (244 SE2d 911) (1978) (failure to enumerate ruling on counterclaim as error waives issue on appeal).