**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2251. GIBSON TECHNICAL SVCS, INC. v. JPAY, INC.

MILLER, Judge.

This case arises from an agreement between Gibson Technical Services, Inc. ("GTS") and JPay, Inc. ("JPay") for the installation of wireless networks and media kiosks in numerous correctional facilities. GTS filed suit against JPay for breach of contract and other claims. GTS subsequently amended its complaint to add a claim for fraud/fraudulent inducement, and JPay filed a motion for partial summary judgment on that claim.[1] GTS appeals from the trial court's grant of summary

---

[1] GTS filed a cross-motion for partial summary judgment, which the trial court denied. GTS failed to enumerate or argue the denial of its motion for partial summary judgment as error on appeal. Accordingly, GTS waived this issue. See Georgia Court of Appeals Rule 25; *Morgan v. Richard Bowers & Co.*, 280 Ga. App. 533, 538 (5) n.11 (634 SE2d 415) (2006).

judgment to JPay, contending that it presented sufficient evidence to support a claim for fraudulent inducement. For the reasons that follow, we affirm.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Campbell v. Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that JPay and GTS entered into discussions in 2009 about providing secure wireless networks for kiosks in correctional facilities. The parties initially discussed an average cost of $30,000 per facility, and GTS submitted a written proposal with an estimated cost of $28,000 for one facility in Michigan (hereinafter the "Cooper Street Proposal").

JPay requested estimates for other facilities and told GTS that the work for each facility needed to cost no more than $30,000. Nevertheless, GTS never communicated *in writing* to JPay that the terms and conditions of the Cooper Street Proposal were supposed to apply to any other facility; that the pricing for each facility

2

would be based on line-item pricing;[2] or that the work on other facilities would cost more than $30,000. Instead, the parties communicated about these issues by telephone.

According to JPay, the parties agreed that the average cost for installation of the kiosks in each facility would be $30,000, and the parties subsequently agreed to raise the average price to somewhere between $40,000 and $50,000 per facility. According to GTS, however, the parties agreed to line-item pricing because the facilities varied in size and there was no way to predict an average cost.

Prior to August 10, 2010, the cost for the work done for all of the State of Washington facilities averaged $45,000 to $50,000 per facility, with the exception of additional electrical work required by the Washington Department of Corrections. On August 10, 2010, the parties had a phone conversation in which GTS informed JPay that GTS would not be able to complete future work for an average price of $40,000 to $45,000. Following this conversation, JPay continued to express its concerns about

---

[2] In July 2010, the parties met to discuss a proposed joint venture. The proposed joint venture would have provided for financing of equipment and installation over a 24-month period, and one of the proposed terms included line-item pricing. The parties, however, did not reach an agreement at that meeting, and GTS ultimately rejected the proposed agreement.

3

the cost of the work for the Washington facilities and reiterated to GTS that JPay had a maximum budget of $45,000 for each of those facilities.

JPay paid GTS for some invoices that were over the initial average of $30,000, as well as some invoices that exceeded $45,000. After GTS filed suit, JPay paid GTS an additional $131,835. In JPay's opinion, this amount represented the difference between the $874,985 that JPay had previously paid GTS and a $45,000 average price for GTS's completed work at 20.5 facilities.

In its sole enumeration of error, GTS contends that the trial court erred in granting JPay's motion for partial summary judgment because GTS presented sufficient evidence to support a claim for fraudulent inducement. We disagree, because the evidence is insufficient to show that JPay made false representations to GTS with a *present intent* not to perform.

At the outset, we note that GTS alleged and argued in its amended complaint and in response to JPay's motion for summary judgment, that JPay knowingly misrepresented its intent to pay for all goods and services supplied by GTS within a 30-day time period. On motion for reconsideration and here on appeal, however, GTS argued that the parties reached an agreement that GTS would be paid on a line item

4

basis within 30 days of invoicing, that JPay had no intention to pay GTS on those terms, and that JPay only intended to pay at most $35,000 per facility.

> In most circumstances, actionable fraud cannot be predicated on a promise contained in a contract because the promise is to perform some act in the future, and normally, fraud cannot be predicated on statements which are in the nature of promises as to future events.[3] However, an exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place. Additionally, if the particular statement at issue in the contract was not a future promise but a present misrepresentation of fact, it is sufficient to support a claim for fraud.

(Citations and punctuation omitted.) *BTL Com Ltd. v. Vachon*, 278 Ga. App. 256, 258 (628 SE2d 690) (2006); see also *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 95 (4) (406 SE2d 502) (1991) (promise made without present intent to perform is misrepresentation of material fact sufficient to support fraud claim).

"Fraudulent intent at the time of contracting can [also] be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith."

---

[3] See also *Jackson v. Brown*, 209 Ga. 78, 80 (2) (70 SE2d 756) (1952) (fraud cannot be predicated upon promises relating to future acts).

5

(Citations and punctuation omitted.) *BTL Com*, supra, 278 Ga. App. at 261 (1). Actionable fraud, however, does not "result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." (Citation and punctuation omitted.) *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 558 (d) (644 SE2d 440) (2007).

Here, as the dissent acknowledges, the evidence clearly shows that the parties had an ongoing dispute regarding how much JPay would pay for GTS's work at each facility. Notably, GTS admitted that JPay repeatedly told GTS that the work for each facility needed to come in at an average cost. Moreover, JPay continued to express its concerns about the cost of the work and its maximum budget at some of the facilities, even after GTS orally informed JPay that GTS would not be able to complete future work for an average price of $40,000 to $45,000. Finally, the evidence shows that JPay paid GTS for some invoices that exceeded $45,000, and, after GTS filed suit, JPay tendered the difference between the amounts it had previously paid to GTS and an average price of $45,000 for GTS's completed work at 20.5 facilities.

This evidence may be sufficient to support a claim for breach of contract or unjust enrichment, depending on whether a jury subsequently finds that the parties

6

reached an agreement regarding the cost of each facility. Contrary to the dissent's argument, however, this evidence does not show that JPay *knowingly misrepresented its present intent* to pay GTS for the work it performed at each facility. See *Pacrim Assocs. v. Turner Home Entertainment*, 235 Ga. App. 761, 767 (3) (510 SE2d 52) (1998) (trial court properly granted summary judgment to defendant where no evidence showed defendant had a present intent not to comply with its promise to retain plaintiff as an exclusive licensing agent for one year); *Futch v. Lowndes County*, 297 Ga. App. 308, 311 (1) (676 SE2d 892) (2009) (affirming grant of summary judgment to county where no evidence showed that county's promise to re-grade ditch was made with present intent not to perform). Accordingly, the trial court properly granted summary judgment to JPay on GTS's claim of fraudulent inducement.

*Judgment affirmed. Andrews, P. J., Barnes, P. J.,and Doyle, P. J., concur. Dillard, Ray and McMillian, JJ., dissent.*

A13A2251. GIBSON TECHNICAL SERVICES, INC. v. JPAY, INC.

RAY, Judge, dissenting.

I respectfully dissent from the affirmance of the trial court's grant of partial summary judgment to JPay, Inc. ("JPay") on Gibson Technical Services, Inc.'s ("GTS") claim of fraud/fraudulent inducement.

We review an appeal from a grant of summary judgment de novo. *JarAllah v. Schoen*, 243 Ga. App. 402, 403 (1) (531 SE2d 778) (2000). To prevail on a motion for summary judgment, JPay, as the moving party, must show that no genuine issue of material fact exists and that the undisputed facts, viewed in the light most favorable to GTS as the nonmovant, warrant judgment as a matter of law. Id. JPay, as a defendant,

> may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [GTS's] case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) Id.

This case arises from GTS's agreement to install wireless networks and to retrofit and install media kiosks for JPay at correctional facilities around the country.

The parties initially discussed an average cost of $30,000 per facility, then later agreed to raise the price to between $40,000 and $50,000 per facility. GTS argues that the work was to be done based on line-item pricing because of variances between facilities and that it was impossible to predict an average cost. The parties did not reduce their discussions to writing.

When JPay failed to pay invoices of more than $1 million related to work at a number of facilities, GTS sued, alleging, inter alia, breach of contract, suit on account, and fraud/fraudulent inducement.[1] JPay moved for partial summary judgment only as to the fraud/fraudulent inducement claim, arguing that it could not survive because it was predicated on a future act. The trial court granted JPay's motion for partial summary judgment. Thus, GTS's other claims as to breach of contract and suit on account are poised to go before a jury.

Here, GTS as the nonmoving party has pointed to specific evidence giving rise to a triable issue. *JarAllah*, supra. "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Footnote omitted.) *Kilroy v. Alpharetta Fitness, Inc.*, 295 Ga. App. 274, 275-276 (1)

---

[1] The fraud claims were added by amendment after the filing of the complaint.

2

(671 SE2d 312) (2008). "To survive a motion for summary judgment in an action for fraud (including fraudulent inducement), a plaintiff must come forward with some evidence from which a jury could find each of the [foregoing] elements." (Punctuation and footnote omitted.) *JarAllah*, supra at 403-404 (1).

In its amended complaint and in response to JPay's motion for summary judgment, GTS argued that JPay knowingly misrepresented its present intent to pay, within 30 days, for the goods and services GTS supplied. GTS supports these contentions by referencing internal documents showing that JPay knew it did not have the financial resources to pay GTS and was dependent on lender financing. GTS also points to deposition testimony showing that JPay had represented to lenders that it could not pay GTS more than $35,000 per site, and argues that this shows that JPay could not have had a present intention to pay GTS because it knew its borrowing capacity was less than the installation cost. GTS also points to a communication between JPay and a lender in which it alleges that JPay misrepresented to the lender the number of invoices that were being paid through financing, thus making it appear that the payments were less than $35,000 per site, while representing to GTS that it was paying other invoices in excess of $35,000 per site.

3

> While fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the promisor knows that the future event will not take place. A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud.

(Citations and punctuation omitted.) *Bowdish v. Johns Creek Assocs.*, 200 Ga. App. 93, 95 (4) (406 SE2d 502) (1991).

Having reviewed the evidence discussed above in the light most favorable to GTS as the nonmovant, I conclude that GTS presented evidence sufficient that a jury, having found that a contract exists or in the context of a suit on account, could find each element of fraud. As to fraud in the inducement, GTS showed that, based on the deposition evidence, a jury could find that JPay knowingly and falsely represented its ability to pay; that GTS justifiably relied on these representations and thus was induced to continue work on the kiosks and installations; and that GTS was damaged when it did not receive payment for its work. See *Kilroy*, supra at 279 (1).

I am authorized to state that Judge Dillard and Judge McMillian join in this dissent.

4