**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 2, 2017**

# In the Court of Appeals of Georgia

A16A2186. CLARY et al. v. ALLSTATE FIRE AND CASUALTY    JE-081
    INSURANCE COMPANY.

ELLINGTON, Presiding Judge.

John and Cathy Clary filed this action in the Superior Court of Putnam County against their homeowners' insurance carrier, Allstate Fire and Casualty Insurance Company,[1] asserting multiple claims in tort and contract based on circumstances surrounding Allstate's handling of their claim against their homeowners' insurance policy. Allstate defended the action, inter alia, on the basis that it had satisfied its obligations under the policy by tendering the amount determined to be due by appraisers selected pursuant to the policy. Allstate filed a motion for entry of judgment on the appraisal award and motions for partial summary judgment as to the

---

[1] The Clarys also asserted claims against other defendants, which are not at issue in this appeal.

Clarys' claims for inceptive fraud, breach of implied contract, negligence, emotional distress, and attorney fees. The Clarys filed a cross motion for partial summary judgment on its claim for a declaratory judgment that the appraisal award was not final. After a hearing, the trial court granted Allstate's motion for judgment on the appraisal award and its motions for partial summary judgment; the trial court denied the Clarys' cross motion. The Clarys appeal, and, for the reasons explained below, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

2

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). The relevant facts that follow are undisputed unless otherwise noted.

The Clarys obtained a homeowners' insurance policy with Allstate in October 2009 for their lakeside residence in Eatonton. Section 1.4 of the policy provides:

> Our Settlement Options. In the event of a covered loss, we have the option to:
>
> a) repair, rebuild, or replace all or any part of the damaged, destroyed or stolen property with property of like kind quality within a reasonable time; or
>
> b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For a Loss." Within 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options we intend to exercise.[2]

Section 1.7 provides:

> Appraisal. If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each

---

[2] See OCGA § 33-32-3 (explaining that the "privilege of rebuilding or reinstating property sustaining loss or damage shall not exist unless it is reserved in the policy.").

party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. . . .

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of the loss.

On August 3, 2010, lightning struck the Clary residence, resulting in a fire, which was extinguished by firefighters. The fire and ensuing water penetration caused severe damage to the residence and the personal property it contained. The Clarys reported the fire to their Allstate insurance agent, Chris Jackson, on August 3, 2010. Jackson called Paul Davis of Restoration of Athens to the home to begin water mitigation. On August 5, 2010, Matt Hunter, an Allstate adjuster, met with the Clarys to view the damage to their home. The parties agree that the lightning fire that partially destroyed the premises was a covered occurrence under the policy. Hunter advised the Clarys that "if it were my property I would let Allstate handle it all." According to the Clarys, Hunter terminated Paul Davis from the mitigation work, hired Elite Response, Inc., to perform that work, hired Icon Restoration, Inc. to perform the repairs, and supervised the repair and rebuilding of the residence until a

4

dispute arose regarding the measures necessary to remediate mold that had formed as a result of the fire and water damage.[3]

When the Clarys reported to Allstate that they thought mold was present at the property, Allstate hired Marge Philbin, an industrial hygienist, to inspect the property. Although there was no dispute the mold was covered under the policy, the parties could not agree on how to remediate the problem. On December 30, 2010, Allstate made a written demand for an appraisal. Allstate selected Larry Masters, and the Clarys selected Chris Dawkins. The appraisers obtained a repair estimate prepared by Icon and used that estimate in determining the amount to allow for structural repairs. The final structural repair estimate by Icon was $329,664.75. The appraisers obtained a protocol for mold remediation from Elizabeth Witten, a certified microbial consultant, agreed to by Allstate and the Clarys. In determining the amount to allow for mold remediation, the appraisers relied on an estimate from Luke Smith of ServiceMaster who advised the appraisers he would complete the remaining mold

---

[3] Allstate contends that Hunter only recommended that the Clarys hire Elite Response and that John Clary actually hired Elite Response, as the general contractor, as well as Icon Restoration, and signed the contract guaranteeing payment. Allstate contends that John Clary personally supervised the work.

remediation for $95,000. The appraisers set the total mold remediation loss at $114,546.44, which reflected remediation work already performed.

On January 20, 2012, the appraisers reached a final agreement and issued an Appraisal Agreement in the following amounts:

Section I, Mitigation Loss
$ 42,572.33
Section II, Mold Remediation Loss
$114,546.44
Section III, Structural Loss
*$329,764.75*
Total
$486,883.52

Once the appraisers issued the award, Allstate issued checks to the Clarys in the amount of the award. The Clarys returned the checks to Allstate and demanded that Allstate complete the restoration. Allstate refused, and the Clarys ultimately deposited the checks after advising Allstate that they would use the proceeds to mitigate the damages they would suffer from Allstate's abandonment of the restoration.

1. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on the appraisal award and in denying their cross motion for partial summary judgment regarding the finality of the appraisal award. They contend that when the privilege to rebuild or repair property is reserved in a policy, and the insurer

6

asserts that privilege and begins repair and restoration, the insurer cannot later abandon the restoration and change its election to paying for the loss. In addition, they contend that a condition precedent to Allstate's right to demand an appraisal, specifically that there was a dispute as to the amount of the loss, was not present, arguing that the amount of loss was no longer an issue once Allstate elected to repair and restore the property. They argue that the appraisal award cannot be considered final because the scope of the appraisal was not determined prior to the commencement of the appraisal process and because the real issue was coverage vel non, which is not the proper subject for an appraisal.

(a) In arguing that, once an insurer begins a restoration, it cannot later change its election to paying for the loss, the Clarys cite *Mason v. Tennessee Farmers Mut. Ins. Co.*, 640 SW2d 561 (Tenn. Ct. App. 1982). In that case, the Court of Appeals of Tennessee stated that, under Tennessee law,

> [w]here an insurer properly exercises its option [in a motor vehicle policy] to repair damaged property, it tacitly represents that it will substantially restore the vehicle as to function, appearance and value. Under these circumstances, the insured has no choice but to acquiesce and [the] insurer is bound to repair the property and restore it to its former condition.

7

640 SW2d at 567 (II). From this the Clarys would have us extrapolate that, under Georgia law, once an insurer exercises its option to repair damaged property, it loses the right to exercise the alternative option under the policy of paying for the insured's loss. This misstates the holding. The Tennessee court held that the insurer did not satisfy its obligation under the replacement contract when it elected to repair the insured's water-damaged truck, where the evidence showed that the repairs the insurer proposed to undertake could not restore the truck to its former condition. Id. The Tennessee court emphasized that, where an insured's property cannot be substantially restored to its fair market value immediately prior to the loss, "the [insurer's] sole method of complying with the insurance contract is to pay to the insured the loss of value." (Citation omitted.) Id. at 566 (II).

The holding in *Mason v. Tennessee Farmers Mut. Ins. Co.* is generally consistent with Georgia law regarding homeowners' insurance. If an insurer elects to repair a damaged home, it satisfies its obligations under the contract only if it restores the property to its former, pre-loss condition. See *Carter v. Allstate Ins. Co.*, 197 Ga. App. 738, 741-742 (2) (399 SE2d 500) (1990) (The insurer that chooses the option to repair the property "assumes a duty to restore the home to a habitable condition" and is contractually obligated "to perform those repairs (or to see to it that they were

8

performed) in a skillful and workmanlike manner.") (citations omitted). Furthermore, even when an insurer restores damaged real property to its pre-loss *condition*, it may *also* be liable to pay for any post-repair diminution in *value*. *Royal Capital Dev. LLC v. Maryland Cas. Co.*, 291 Ga. 262, 265 (1) (728 SE2d 234) (2012). This flows from the principle that Georgia law favors full recovery, that is, that an injured party be placed, "as nearly as possible, in the same position it would have been if the injury had never occurred." (Citations omitted.) Id. at 264 (1).

Based on the foregoing, we conclude that Georgia law does not support the Clarys' argument that, having elected to repair the property, Allstate breached the contract by abandoning the restoration and instead electing to pay the Clarys the amount of the loss. *Carter v. Allstate Ins. Co.*, 197 Ga. App. at 742 ("Allstate was entitled under the terms of the policy either to pay the [homeowners] for the fire damage or to repair the damage itself[.]"). In the same vein, we conclude that the Clarys' argument that, once Allstate elected to repair the property, the amount of loss was no longer an issue is not supported by Georgia law.

(b) In addition, the Clarys' argument that the real issue determined by appraisal was coverage vel non, which is not the proper subject for an appraisal, is not supported by the record. The record is undisputed that Allstate never denied coverage

9

on the basis that the fire and water damage was not a covered event, nor on the basis that the policy did not cover mold remediation.[4] The record is undisputed that the appraisers undertook to determine the cost of all repairs necessary to restore the property to its pre-loss value, including mold remediation.

2. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on their claim that Allstate negligently performed, supervised, and managed the restoration of their home. They contend that, by virtue of Allstate's election to rebuild, it had a duty of care, apart from its contractual duties, to perform the repair and rebuild work in a skillful and workmanlike manner.

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. The legal duty is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm. This legal obligation to the complaining party must be found, the observance of

---

[4] Furthermore, the Clarys' argument that the scope of the appraisal was not determined prior to the commencement of the appraisal process is not supported by the record. Dawkins, the Clarys' chosen appraiser, understood the appraisers' task to be "to identify and put a dollar amount on any and all damage to the property" and to determine the amount of the loss. Masters, Allstate's chosen appraiser, testified that their task was to arrive at a total loss amount.

10

which would have averted or avoided the injury or damage; the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law.

(Citations and punctuation omitted.) *Rasnick v. Krishna Hospital, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011). Thus, it is not enough for a plaintiff to show that the defendant owed the plaintiff a duty of care, the plaintiff must specify the conduct that constituted a breach of that duty, that is, what the defendant did that it should not have done.

In their complaint, in responding to Allstate's motion for summary judgment, and now on appeal, the Clarys assert in a conclusory manner that Allstate negligently performed, supervised, and managed the restoration of their home. The Clarys have not identified any restoration work performed by Allstate's agents that was not performed in a skillful and workmanlike manner. To the extent the Clarys base their negligence claim on Allstate's exercising its option to pay the value of the loss, rather than to undertake to repair and rebuild, such conduct does not constitute the breach of any duty. *Tate v. Aetna Cas. & Sur. Co.*, 149 Ga. App. 123, 124-125 (253 SE2d

11

775) (1979) (Georgia does not recognize a claim for negligent handling of an insurance claim.).

3. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on their claim for breach of an implied contract. The Clarys argue that, when Allstate initially opted to repair the damage to their home, a new agreement arose between them under which Allstate assumed a duty to restore the home to a habitable condition. They contend that Allstate breached that implied agreement when it abandoned its efforts to repair the home and instead insisted on the appraisal process.

Under Georgia law, "[t]here cannot be an express and implied contract for the same thing existing at the same time between the same parties." (Punctuation and footnote omitted.) *Georgia Real Estate Properties, Inc. v. Lindwall*, 303 Ga. App. 12, 15 (3) (692 SE2d 690) (2010). Therefore, where there exists an express agreement covering the same subject matter, the courts will not imply a contract. Id. As noted in Division 1, supra, if an insurer repairs damaged property, in lieu of paying for the loss, it is obligated under the insurance contract to perform those repairs in a competent manner. *Carter v. Allstate Ins. Co.*, 197 Ga. App. 738, 741-742 (2) (399

SE2d 500) (1990). Because an express agreement covered the same subject matter, the Clarys cannot recover on any implied contract.

4. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on their claim for inceptive fraud. "To establish a claim for fraud in the inducement, or inceptive fraud to enter into a contract, a plaintiff must prove both that the defendant failed to perform a promised act and that the defendant had no intention of performing when the promise was made." (Citation omitted.) *Nash v. Roberts Ridge Funding, LLC*, 305 Ga. App. 113, 116 (1) (699 SE2d 100) (2010). See also *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 152 (2) (304 SE2d 365) (1983) ("An action for fraudulent inducement can be made out . . . [by] show[ing] that the defendant . . . made promises as to future events with the present intention not to perform or with the knowledge that the future event would not occur.") (citations omitted).

> Fraudulent intent at the time of contracting can . . . be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. Actionable fraud, however, does not result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud.

13

(Citations and punctuation omitted.) *Gibson Technical Svcs., Inc. v. JPay, Inc.*, 327 Ga. App. 82, 84 (755 SE2d 377) (2014).

Like their claim for breach of an implied contract, the Clarys' claim for inceptive fraud is premised on their position that a new agreement arose between them and Allstate under which Allstate assumed a duty to restore the home to a habitable condition. See Division 3, supra. The Clarys contend that there is evidence that, after the fire, Allstate promised to repair their home while intending not to fulfill that promise.[5] The Clarys' do not specify, however, what Allstate's allegedly fraudulent promise to repair induced them to do. Not only was Allstate's duty after the fire to restore the Clarys' home competently (or to pay for the loss) established by the insurance contract, but the Clarys' own duties following the loss arose from the policy. Because the Clarys do not allege that they agreed to perform any act

---

[5] The Clarys contend that Allstate's Matt Hunter testified that he did not intend to repair and rebuild the Clary home, which at the very least creates a fact issue as to whether Allstate intended to fulfill its promise to rebuild when the promise was made. Hunter Deposition, [Appellate Record] Vol. 4, pp. 449-450 (showing that Mr. Hunter never intended to repair and rebuild the home despite his actions in hiring the contractors and directing the restoration process).
We have reviewed the referenced portion of the transcript and find that it does not support the Clarys' characterization.

14

because of Allstate's allegedly fraudulent promise, they failed to make a claim for fraudulent inducement. Id. at 85.

5. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on their claim for emotional distress.

> Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

(Citation and punctuation omitted.) *Thompson-El v. Bank of America*, 327 Ga. App. 309, 312-313 (3) (759 SE2d 49) (2014).

As evidence of outrageous conduct, the Clarys identify Hunter's alleged "refus[al] to make accommodations for [John] Clary's susceptibility to mold conditions," Allstate's alleged "misrepresentations of the Clarys' rights under the

15

policies," and Allstate's allegedly improper invocation of the appraisal process. But a "mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party" to pursue a tort action, even if the alleged breach caused great hardship." (Citation and punctuation omitted.) *Tate v. Aetna Cas. & Sur. Co.*, 149 Ga. App. 123, 124-125 (253 SE2d 775) (1979) (Where the plaintiff's claim arose solely from the defendant's alleged breach of a contractual duty to cover his insurance claim, the plaintiff could not recover damages for emotional distress.). We conclude that the trial court did not err in granting Allstate's motion for summary judgment because the Clarys failed to allege any acts by the defendants that were extreme and outrageous or that any emotional distress on their part was so severe that no reasonable person could be expected to endure it. *Thompson-El v. Bank of America*, 327 Ga. App. at 312-313 (3) (A lender's conduct in foreclosure proceedings against defaulting borrower did not amount to extreme and outrageous acts tending to cause emotional distress so severe that no reasonable person could be expected to endure it.); *Massih v. Mulling*, 271 Ga. App. 685, 687-688 (2) (610 SE2d 657) (2005) (An employer's alleged breach of an oral contract to transfer an ownership interest in the company to an employee would not support the employee's claim for intentional infliction of emotional

16

distress.); *Frank v. Fleet Finance*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999) (A lender's conduct in failing to close on a contract for the sale of a residence to its current tenant and then evicting him did not support the tenant-buyer's claim for intentional infliction of emotional distress.); *Lincoln Nat. Life Ins. Co. v. Davenport*, 201 Ga. App. 175, 176 (5) (410 SE2d 370) (1991) ("An insurer's failure to pay benefits under an insurance policy does not, as a matter of law, rise to the level of such outrageousness requisite to a cause of action for intentional infliction of emotional distress.") (citations omitted).[6]

6. The Clarys contend that the trial court erred in granting Allstate's motion for judgment on their claim for attorney fees pursuant to OCGA § 13-6-11. Specifically, they contend that their claims are not based exclusively on an alleged bad faith refusal

---

[6] Cf. *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991) (Evidence that an employer deliberately set out to retaliate against its employee for testifying against the employer, which retaliation included subjecting her to abuse by her supervisor and causing her severe emotional pain could meet the threshold which reasonable persons would consider outrageous and extreme conduct sufficient to subject the company to damage for intentional infliction of emotional distress.); *Turnage v. Kasper*, 307 Ga. App. 172, 183-184 (1) (c) (704 SE2d 842) (2010) (Where the defendants repeatedly photographed and publicly humiliated a neighbor with whom they had a dispute, and schemed to have the neighbor arrested for aggravated stalking and incarceration without bail, knowing that she walked by their property merely to pick up her children from their designated bus stop, such conduct could be considered by a jury to be extreme and outrageous.).

17

to pay their insurance claim, but are also based on Allstate's failure to repair their home after electing to do so, and therefore they are not limited to seeking fees under OCGA § 33-4-6.[7]

An award of attorney fees and other expenses of litigation is authorized pursuant to OCGA § 13-6-11, where (1) the plaintiff specially pleads and prays for such an award, and (2) the finder of fact finds that the defendant acted in bad faith in the underlying transaction or that, after the transaction on which the cause of action is predicated, the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense. But expenses of litigation are not recoverable pursuant to OCGA § 13-6-11 unless other elements of damages are recoverable.

---

[7] "In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." OCGA § 33-4-6 (a). Because the General Assembly has provided in OCGA § 33-4-6 a specific procedure and a limited penalty for bad faith failure to pay insurance claims, such limited penalty and procedure were intended by the legislature to be the exclusive procedure and penalty, and recovery under general penalty provisions such as OCGA § 13-6-11 is not allowed for bad faith failure to pay insurance claims. *Balboa Life & Cas. v. Home Builders Fin., Inc.*, 304 Ga. App. 478, 483 (3) (697 SE2d 240) (2010); *United Svcs. Auto. Assn. v. Carroll*, 226 Ga. App. 144, 149 (5) (486 SE2d 613) (1997); *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (2) (448 SE2d 275) (1994).

*Lincoln Nat. Life Ins. Co. v. Davenport*, 201 Ga. App. 175, 176 (410 SE2d 370) (1991); *Connell v. Houser*, 189 Ga. App. 158, 160 (5) (375 SE2d 136) (1988); *Basic Four Corp. v. Parker*, 158 Ga. App. 117, 121 (279 SE2d 241) (1981). Because Allstate has prevailed on each of the substantive counts of the Clarys' complaint, it necessarily follows that it is also entitled to summary judgment on the claim for attorney fees. *Connell v. Houser*, 189 Ga. App. at 160 (5).

*Judgment affirmed. Branch and Mercier, JJ., concur*.